**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0320n.06

**No. 10-4087**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

*Mar 23, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| Carrie Johnson, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| Washington County Career Center, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before:  SILER, CLAY, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge.  Plaintiff Carrie Johnson, a former student in Defendant Washington County Career Center's (WCCC) one-year surgical technologist program, appeals the district court's grant of summary judgment for WCCC.  Johnson brought suit under the Americans with Disabilities Act (ADA) and the Ohio Civil Rights Act (OCRA) to contest her exclusion from the 2008 program.

For the following reasons, we **REVERSE** the district court's judgment and **REMAND** for further proceedings.

**I.**

Interested in joining the surgical technologist program, Johnson met with WCCC officials, including Adult Education Medical Programs Director Constance Bennett, on February 26 and 27, 2008.  Johnson disclosed a "learning disability involving reading and comprehension" and inquired about audio textbooks or a Kurzweil Reader for classes.  WCCC officials assured Johnson that an accommodation would be provided.

After those meetings, Johnson registered for the program. WCCC required only a completed application and payment in order to admit Johnson. She began the program on February 27, near the midpoint of the January 7 academic term. Bennett told Johnson that she had not missed much content and that her prior associate's degree would be sufficient for enrollment.

That evening, during Johnson's first class, the evening supervisor handed Johnson a note indicating that she needed to provide "proof of [] degree and disability." The next day, Johnson faxed a copy of her associate's degree diploma and a letter from her vocational rehabilitation counselor at the Bureau of Vocational Rehabilitation. Bennett advised Johnson that the faxed materials would be sufficient.

On March 3, Bennett and Adult Technical Training Director Dewayne O. Poling discussed Johnson. Poling "questioned what was wrong with [] Johnson . . . [and] stated that WCCC did not have the time to spend for just one student, and that [Bennett] was going to have to think about what to do since [she] recommended [] Johnson for the Program."

On March 4, Poling wrote to Johnson that her prior education would not apply to the surgical technologist program. The letter advised Johnson that another program would begin in January 2009 and notified her that she would receive a refund of her payment when she returned her books.

The next day, Johnson emailed Bennett for an explanation of the program's refusal to accept her prior academic work. Johnson copied Poling on the email. Bennett advised Johnson to continue attending class while she sought clarification from Poling about the unexpected academic decision. During Bennett's conversation with Poling, she stated that WCCC did not have a choice whether to provide the audio books or Kurzweil Reader. Poling responded, "There's always a choice."

No. 10-4087
*Johnson v. Washington County Career Center*

On March 11, Johnson appealed her removal from the surgical technologist program before a meeting of the Board of Education of the Washington County Joint Vocational School District. She won the appeal.

On March 16, Johnson contacted Bennett, reported chest and side pain, and asked what options were available if she had to miss class. Bennett advised Johnson not to worry about classes. Johnson learned she had blood clots in her lungs, would be limited in her activities upon release from the hospital, and should refrain from climbing stairs. The surgical technologist classes were held on the second floor and were only accessible by stairs.

On March 19, Bennett wrote Johnson a detailed letter, including the following specific language, quoted at length due to its relevance:

> The only advice I can give you is to continue to study at home and I will attempt to contact the Instructors for assignments, which you can study for, continue to check with the office regarding your CD-ROM materials, and keep reminding them, that each day you go without them, you fall further behind. The end of the quarter will be the 27th, and after that students have time into the next quarter to make up the work they have missed, then they get the grade and the incomplete is removed.

> Please do not worry about your class as stress plays a large role in your recovery or lack thereof. As Lenora has repeatedly reminded all of us, the regulatory agency is mandating 80 surgical cases, and they are not as concerned regarding hours, per say [sic]. This is very positive for us in this instance. We must all realize that if you cannot physically negotiate the stairs and there is no alternate route to your class room, we cannot and will not count you responsible for the absence. We need to develop an alternate option for you to obtain your education and hours. This has been a concern of mine for some time, which I spoke to my Supervisor about, and he was to look into handicap accessibility. He is very busy and perhaps he has not been able to follow up on this issue. I do apologize to you for the inconvenience, and we will be working on this for you and others as needed.

> I see and understand from your call to me that you are concerned and willing to do whatever you can to make up missed work, and work to keep current with the class . . . .

When Bennett asked Poling about accessibility issues and the second-floor classroom, he responded, "She can find her own way up."

Johnson contacted Bennett again on March 21, March 24, and March 27 to ensure everything would be okay. Bennett explained again that any missed work could be made up the next academic term and that Johnson would receive an incomplete for the current term. The student handbook specified the same procedure.

In the meantime, on March 24, Bennett met with Poling to discuss Johnson's release from the hospital and what accommodations would be made. Poling stated that Johnson could not come back to WCCC. When Bennett raised the issue of accommodations, Poling "stated that he never wanted to hear about the topic again, and stated, 'That tail ain't going to wag this dog.'"

On April 4, Johnson contacted Bennett to ask where to submit completed assignments and to request communication with her instructors as soon as possible. Johnson called WCCC again on April 8 to try to reach her instructors. That day, Poling called Johnson's mother and left a message that Johnson should speak to him and not Bennett about the program.

Meanwhile, on April 7, Poling had sent a certified letter to Johnson requesting a meeting about her participation in the program. Additionally, the letter advised Johnson that Bennett "no longer act[s] as the contact for all medical programs." Instead, Poling would be "in charge and [would] make all decisions and communications regarding the medical programs for the rest of the school year."

On April 11, Johnson responded to Poling's letter and reported that she has been trying to reach her instructors to seek class assignments. Johnson indicated that she resorted to calling fellow students to try to learn what assignments to complete. After receiving no response, Johnson re-sent the email on April 15. Two days later, on April 17, Poling emailed a response to Johnson, in relevant part:

> The Career Center is a clock hour institution and students have to be in school to get credit for attendance. The best I can recommend is you register for the start of our next program to begin January 2009. I am instructing the treasure [sic] to send you a full refund of monies you have paid and hopefully you will consider us again.

A WCCC staff member completed a refund form and, on the line for the student's signature, wrote "per D.P." and dated the form April 28.

In May 2008, Johnson filed suit against WCCC, contending that the institution violated the ADA by excluding her from participation in the surgical technologist program and denying her the benefits of the services, programs, or activities of that program. Additionally, Johnson brought suit under the OCRA, claiming that WCCC, as a place of public accommodation, unlawfully denied her full enjoyment of its accommodations, advantages, facilities, or privileges. As relief for the ADA claim, Johnson demanded an injunction, attorneys' fees, and costs, and for the OCRA claim, she sought compensatory and punitive damages, an injunction, attorneys' fees, and costs.

After the close of discovery, WCCC moved for summary judgment. After briefing, the district court granted summary judgment to WCCC, concluding that Johnson could not establish genuine disputes of material fact that she was "otherwise qualified" to continue in the program or that WCCC dismissed her at all, much less because of her disability. In particular, the district court

credited WCCC's contention that its clock-hour attendance policy meant that Johnson could not complete the program, even if she had a legitimate reason for missing classes. Moreover, the district court articulated doubts about the credibility of Bennett and relied very little on her affidavit and representations.

## II.

We review *de novo* a district court's grant of summary judgment. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

To establish whether dismissal from an academic program constitutes a disability discrimination action under the ADA, a plaintiff must show that "(1) she is handicapped or disabled as defined in each statute, (2) she is 'otherwise qualified' to continue in the program, and (3) she was dismissed from the program on the basis of her handicap or disability." *Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 435 (6th Cir. 1998). OCRA disability discrimination claims utilize the same analysis of ADA claims. *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 872 (6th Cir. 2007). For purposes of summary judgment, WCCC elected not to contest Johnson's disability under the ADA and OCRA, so the summary judgment determination turns on the other two factors.

## A.

A genuine dispute of material fact remains as to whether Johnson was "otherwise qualified" for the surgical technologist program. When a disabled person meets a program's necessary requirements with reasonable accommodation, that person is "otherwise qualified" to participate in the program. *Kaltenberger*, 162 F.3d at 435. That said, "'an educational institution [need not] . .

. lower or . . . effect substantial modifications of standards to accommodate a handicapped person.'"

*Id.* at 436 (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 413 (1979)). Courts

should afford deference to professional academic judgments concerning reasonable accommodations.

*Id.*

WCCC contends that, because Johnson missed a substantial number of classes, no genuine

dispute exists that she is not "otherwise qualified" to continue. On behalf of WCCC, the

superintendent tendered an affidavit stating that, for accreditation purposes, "a number of class hours

and cases are required of each student." However, directly opposing that representation, Johnson

provided an email from an accreditation specialist with the accreditation agency stating, "We don't

actually go by clock hours or credit hours. We look at the number of cases."

WCCC also relies on its student handbook as a basis for a clock-hour attendance policy

requirement. However, that student handbook states that, if a student fails to meet the minimum

attendance requirements, that student will be placed on academic probation for the following quarter,

rather than be dismissed. The student may also lose financial aid. WCCC counters that Johnson had

not even registered for the second academic term of the program.

However, WCCC apparently waived the attendance policy up until Johnson's enrollment,

and there is a dispute of material fact concerning any necessary, but unprovided, accommodation

subsequent to her hospitalization.

The record also reflects that Johnson remained in constant communication with Bennett, her

program director, who assured her that she would be able to work on assignments while recovering

and make up any tests the next academic term. Bennett told Johnson specifically not to worry about

class absences. The student handbook arguably supports what Bennett advised Johnson. When Bennett said that Johnson could make up work under the student handbook policy, Bennett served as program director, and she had not yet been removed by Poling.

Johnson sought to request accommodations at least twice from WCCC. A publicly funded academic institution is not obligated to accommodate under the ADA until receiving a proper diagnosis and request for specific accommodation. *Kaltenberger*, 162 F.3d at 437. First, prior to enrolling, Johnson met with two WCCC staff members, including the program director; disclosed her learning disability; and sought assurance that her disability would be accommodated by audio textbooks or a Kurzweil Reader. Upon request of WCCC, Johnson also provided documentation that she had been diagnosed with a learning disability. Bennett advised Johnson that the documentation she provided would be acceptable, so Johnson did not provide any additional documentation. While Johnson takes issue with the timeliness and appropriateness of WCCC's efforts to acquire audio books or a Kurzweil Reader, this raises a factual issue but does not support summary judgment.

Second, as soon as she learned her doctor's release conditions, Johnson notified Bennett that she would not be able to climb stairs and thus could not attend class, if held on the second floor, as before. Bennett accepted Johnson's notification as sufficient and initiated discussions with Poling about making the classroom accessible for Johnson. The record implies, but does not state for sure, that Poling refused to move the surgical technologist classes to a classroom accessible by ground-floor location or elevator.

In short, our review of the record shows that a genuine dispute of material fact remains as to whether Johnson stands as "otherwise qualified" under the ADA and OCRA.

**B.**

Next, a genuine dispute of material fact remains as to whether WCCC dismissed Johnson from the program because of her disability.

WCCC contends that Johnson, after putting forth the effort she did to remain in the program and staying in constant contact with Bennett, simply quit the program, choosing not to register for or attend any further classes. This conclusion appears inconsistent with some evidence in the record, including Johnson's appeal to remain in the program, just a little more than a month before, after a previous dismissal and her documented persistence in emails to program director Bennett. Moreover, the April 17 email from Poling informed Johnson that she could not continue attending WCCC since she would (purportedly) not receive credit and a refund would be processed.

Moreover, Poling made several remarks suggesting that he did not want to deal with disability accommodations for Johnson. Within two months of her initial program registration, Johnson faced removal from the program twice and had to win an appeal just to remain in the program the first time. The district court apparently found Bennett's affidavit not to be as credible as other evidence in the record and noted the obvious animosity between Bennett and Poling. Any such questioning of bias or motive should be a matter for cross-examination, not summary judgment. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."). Poling's remarks and the sequence of events around those remarks present a genuine dispute of material fact as to whether WCCC dismissed Johnson because of her disability.

**III.**

For the reasons described, we **REVERSE** the district court's judgment and **REMAND** for further proceedings.