NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0300n.06

No. 14-6220

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ZEESHAN SHAIKH, | ) | **FILED** |
| | ) | Apr 27, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LINCOLN MEMORIAL UNIVERSITY, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Zeeshan Shaikh was a medical student at defendant Lincoln Memorial University's ("LMU") DeBusk College of Osteopathic Medicine. LMU dismissed Shaikh from the school after he initially failed to complete his first semester courses and failed two additional classes after a leave of absence. Shaikh filed suit, alleging that LMU violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, by failing to provide him reasonable accommodations. On appeal, he claims that the district court erred in granting summary judgment because there was a question of fact on the issue of reasonable accommodation. We disagree and affirm the judgment of the district court.

I.

LMU opened the doors of its medical school in August 2007. Since its inception, it has offered a four-year, full-time Doctor of Osteopathic Medicine curriculum, which includes two years of pre-clinical science classes and two years of clinical rotations. LMU accepted Shaikh into its fall 2009 entering class. Prior to his admission, Shaikh was diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD") and Dyslexia. He was prescribed Adderall to treat his ADHD and took Adderall during his time at LMU because it helped him focus. Shaikh disclosed that he had difficulty reading in his application to LMU and interview with LMU officials.

In April 2009, Shaikh submitted documentation of his ADHD and Dyslexia diagnoses to Associate Dean of Students Jonathan Leo, Ph.D. Shaikh later emailed Dr. Leo to ask if he had received it. Dr. Leo responded, "I got it. You will get time and a half on written exams and a quiet room. I'm on the road right now, But I will be back in the office tomorrow if you want to talk about it." Shaikh replied, "That sounds fine. I have received 50% more time throughout undergrad and that worked fine." In his reply, Shaikh went on to ask Dr. Leo whether Shaikh needed to pick up a "Student Accommodation Form," or whether Dr. Leo would send one to Shaikh's professors. The LMU Student Handbook set forth the following procedure for receiving disability accommodations:

> All documentation related to the student's disability and accommodations shall be maintained by the Assistant Dean of Students. Upon receipt of the documentation, the Assistant Dean of Students will meet with the student, either in person or by telephone, to discuss and make arrangements for accommodations for the upcoming semester. A Student Disabilities form will be completed listing the agreed upon accommodations, and will be signed by the student, the student's faculty members and the Assistant Dean of Students. This process shall be followed each semester for which the student wishes to request accommodations. If a problem arises concerning the reasonable accommodations, the student should contact the Assistant Dean of Students.

There is no evidence to suggest that Dr. Leo ever responded to Shaikh's question about the accommodation form. Nor is there evidence that Shaikh followed up with Dr. Leo or another LMU faculty member to complete an accommodation form. Ultimately, no written accommodation form was completed.

For the fall 2009 semester, Shaikh did not request any additional accommodations beyond those he accepted in his email exchange with Dr. Leo. He was permitted fifty percent more time during examinations and a quiet room in which to take them. Additionally, he was allowed to sit at the front of his classes and had access to lecture notes, PowerPoint presentations, and an electronic Blackboard prepared by instructors approximately one week before classes. LMU also posted video recordings of class lectures online so students could view them as many times as necessary. That semester, Shaikh took five standard pre-clinical science classes. The Anatomy Department assigned Shaikh a tutor at the beginning of the semester for one of his classes, Medical Gross Anatomy. In October 2009, however, Shaikh stopped studying for that class to focus on Molecular Fundamentals of Medicine I ("MFM-I"). Nonetheless, at the end of the semester, Shaikh decided not to take his scheduled MFM-I final examination, citing personal issues.

Instead of completing the semester, Shaikh took a leave of absence. During his leave, he enrolled in a short-term program for medical students with learning disabilities at another university. After completing the program, Shaikh received permission to reenroll at LMU. Shaikh submitted to LMU disability-related documentation from his short-term program, including a report with nineteen "specific recommendations" for success in medical school.

For the fall 2010 semester, Shaikh did not specifically request any additional accommodations and was provided the same accommodations he had been given the prior

academic year. He repeated the same five courses he had previously taken. At the end of the semester, he earned a 69.58 percent grade in Medical Gross Anatomy, which, when rounded up to 70 percent, allowed Shaikh to pass all five courses.

Shaikh did not request any additional accommodations for the spring 2011 semester. That semester, Shaikh failed two of his pre-clinical courses and had failing averages in two others. He met with the Student Progress Committee ("SPC") on April 29, 2011, to discuss his academic progress. According to the Student Handbook, the SPC was charged with monitoring student progress and ensuring that all students meet LMU's graduation requirements. For students who fail two courses of the pre-clinical curriculum, the SPC may recommend: requiring the student to retake a course, take a remediation exam, or repeat an entire academic year. Alternatively, the SPC may recommend issuing a reprimand from the dean or dismissing the student from LMU.

During the SPC meeting, Shaikh mentioned that he might benefit from a decelerated, five-year—rather than four-year—curriculum. He did not submit a proposed decelerated program or a recommendation from a health care professional in support of such a proposal. After Shaikh was excused from the meeting, the SPC voted to dismiss him. Shortly after the meeting, Shaikh emailed Dr. Leo, requesting for the first time a decelerated curriculum as an accommodation. He explained, "I should have mentioned this earlier, but felt that this would be too much to ask and that if I worked extremely hard, I could do well. . . . I am requesting possible consideration for reasonable adjustments to my course work because clearly [] the current pace is not working. I did briefly mention this to the SPC but wanted to give you more detail of what I have been thinking of, so I would not have any regrets." On May 1, 2011, Shaikh sent an email to Dean Ray Stowers, D.O., with a proposal for a five-year decelerated

curriculum. Again, Shaikh did not submit documentation from a health care professional in support of such an accommodation. The following day, Shaikh met with Dr. Stowers, who informed him that Dr. Stowers would accept the SPC's recommendation to dismiss.

Shaikh appealed the dismissal. Attached to his letter of appeal dated May 9, 2011, Shaikh produced for the first time a letter from Barbara Guyer, Ed.D., recommending that LMU provide Shaikh "double time on all quizzes and tests" and "a decreased course load" that "should result in successful completion of the Basic Science curriculum in three years," rather than two. Shaikh addressed his proposal before the Appeal Board, but his appeal was denied.

Thereafter, Shaikh filed this action in district court, alleging that LMU failed to provide him reasonable accommodations, in violation of the ADA and Section 504 of the Rehabilitation Act.

## II.

We review de novo a district court's grant of summary judgment. *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is proper if the evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We consider all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001).

Claims brought under the Rehabilitation Act are generally reviewed under the same standards that govern ADA claims. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). To establish that he was dismissed from an academic program in violation of the ADA or Rehabilitation Act, a plaintiff must show that (1) he is handicapped or disabled, (2) he is "otherwise qualified" to continue in the program, and (3) he was dismissed on the basis of his

handicap or disability. *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). "A handicapped or disabled person is 'otherwise qualified' to participate in a program if [he] can meet its necessary requirements with reasonable accommodation." *Id.* (citing *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1034 (6th Cir. 1995)); *see also Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 406 (1979) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap."). "A plaintiff asserting a violation of the ADA or Rehabilitation Act bears the burden to establish that he is qualified." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 462 (4th Cir. 2012). A plaintiff thus bears "the burden of proposing an accommodation and proving that it is reasonable," *Jakubowski*, 627 F.3d at 202, including establishing that he can meet a program's "necessary requirements" with that accommodation, *Kaltenberger*, 162 F.3d at 435.

"A publicly funded university is not required to provide accommodation to a student under the ADA or Rehabilitation Act until the student provides a proper diagnosis of his claimed disability and specifically requests an accommodation." *Carten v. Kent State Univ.*, 78 F. App'x 499, 500–01 (6th Cir. 2003) (citing *Kaltenberger*, 162 F.3d at 437); *see also Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992) ("A relevant aspect of [the reasonableness] inquiry is whether the student ever put the medical school on notice of his handicap by making a sufficiently direct and specific request for special accommodations." (internal quotation marks omitted)). The ADA and Rehabilitation Act "do not require 'an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person.'" *Kaltenberger*, 162 F.3d at 436 (quoting *Se Cmty. Coll.*, 442 U.S. at 413). While a university "need not be required to make fundamental or substantial modifications to accommodate the

handicapped, it may be required to make reasonable ones." *Id.* (internal quotation marks omitted).

In reviewing the substance of academic decisions, courts "'should show great respect for the faculty's professional judgment.'" *Id.* (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)). "'University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.'" *Id.* (quoting *Ewing*, 474 U.S. at 225 n.11). "Courts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement." *Id.*; *see also Halpern*, 669 F.3d at 463 (surveying cases). "As we have noted, 'the federal judiciary is ill equipped to evaluate the proper emphasis and content of a school's curriculum.'" *Kaltenberger*, 162 F.3d at 436 (quoting *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 576 (6th Cir. 1988)) (alteration omitted). "We should only reluctantly intervene in academic decisions, 'especially regarding degree requirements in the health care field when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession,'" *id.* at 437 (quoting *Doherty*, 862 F.2d at 576), "a profession whose practitioners are entrusted with life and death decisions." *Manickavasagar v. Va. Commonwealth Univ.*, 667 F. Supp. 2d 635, 643 (E.D. Va. 2009).

## III.

The parties dispute the second and third elements of Shaikh's prima facie case: whether he is "otherwise qualified" for LMU's medical program, and whether he was dismissed on the basis of his disability. Fundamentally, however, Shaikh's argument on appeal with respect to both elements is that he has established an underlying question of fact: whether LMU failed to provide him reasonable accommodations. In light of the circumstances and substance of

Shaikh's proposed decelerated curriculum, Shaikh has not satisfied his burden of proposing a reasonable accommodation. Absent a disputed question of fact for the jury on this issue, we affirm the district court's grant of summary judgment in favor of LMU.

Shaikh's own admissions and argument on appeal support the conclusion that without accommodation he is unqualified to participate in LMU's medical program. The question for this court is therefore "whether he proposed a reasonable accommodation to account for his disability." *Jakubowski*, 627 F.3d at 202.

LMU argues that Shaikh's proposed decelerated curriculum was declined, in part, because Shaikh made it after failing two major classes. The parties do not dispute that Shaikh failed to specifically request any accommodations beyond those he agreed to in an email exchange with Dr. Leo in spring 2009 until after he had failed to complete his first semester, took a leave of absence, reenrolled but subsequently failed two first-year courses, and had failing averages in two other courses. Shaikh admits that he "began to struggle almost as soon as [he] entered" LMU, including "perform[ing] poorly on [his] first Anatomy examination" on August 28, 2009. Nevertheless, only once he had failed multiple classes and was before the SPC on account of his academic performance did Shaikh mention that he might benefit from a decelerated program. Only after meeting with the SPC did he make such a suggestion to Dr. Leo. And only after his dismissal had been accepted by Dr. Stowers did Shaikh submit a health care professional's recommendation that a decelerated curriculum would accommodate his disability. That is not to say that Shaikh's proposal was *per se* untimely, but that LMU could have reasonably considered Shaikh's poor academic performance in determining whether dismissal was appropriate and whether he was otherwise qualified for the program. *See Kaltenberger*, 162 F.3d at 436 (observing that no reasonable trier of fact could conclude that the

college failed to reasonably accommodate the plaintiff's disability where plaintiff had already failed two courses in her first-year program before she requested specific accommodation).

LMU also contends that Shaikh's decelerated curriculum proposal was not a "reasonable" accommodation because it would have involved fundamental substantive and structural changes to LMU's medical program, posing staffing challenges and financial aid complications. LMU administrators opined that designing a five-year curriculum would have required "a huge amount of time and effort," including reallocating course content, and preparing it for accreditation. Moreover, Shaikh's proposal as written would have precluded Shaikh from participating in requisite group examinations. Plaintiff does not offer evidence to the contrary. Instead, he argues that LMU failed to follow its own disability accommodation policy and his request for a decelerated program was denied without "real consideration or study."

Viewing the evidence in the light most favorable to Shaikh, we conclude that he has not established a genuine issue of fact of whether he proposed a reasonable accommodation. "Although determination of the reasonableness of a proposed modification is often fact-specific, a court may grant summary judgment in favor of a defendant if the plaintiff fails to present evidence from which a jury may infer that the accommodation is 'reasonable on its face, *i.e.,* ordinarily or in the run of cases,' or if the defendant establishes as a matter of law that the proposed modification will cause 'undue hardship in the particular circumstances.'" *Halpern*, 669 F.3d at 464 (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401−02 (2002)). Under the circumstances, no reasonable juror could find that Shaikh's proposed accommodation was reasonable. LMU has introduced unrefuted evidence that Shaikh's proposed decelerated curriculum would have required significant modification to LMU's curriculum. The ADA and Rehabilitation Act "do not require an educational institution to . . . effect substantial

modifications of standards to accommodate" a person with a disability. *Kaltenberger*, 162 F.3d

at 436 (internal quotation marks omitted).

Although we do not condone LMU's failure to abide by its own policies (e.g. to initially

meet with Shaikh in person or by telephone and complete a student accommodation form), the

relevant inquiry is whether LMU violated the ADA or Section 504 of the Rehabilitation Act, not

whether LMU followed its internal policies. Shaikh admits that he accepted the modifications

initially offered to him and that he waited until he was already before the SPC and eligible for

dismissal before raising the possibility that a decelerated program might have been a reasonable

accommodation. While Shaikh argues that LMU denied his request without "real consideration

or study," the nature of Shaikh's proposal—a significant departure from the only accredited

curriculum at LMU—alone supports the proposition that Shaikh's proposed accommodation was

not reasonable. In this context, we "show great respect for the faculty's professional judgment"

on issues of modification to curriculum and the conferring of degrees, *Kaltenberger*, 162 F.3d at

436 (internal quotation marks omitted), because questions of "the proper emphasis and content of

a school's curriculum" are ones that "the federal judiciary is ill equipped to evaluate," *id.*

(quoting *Doherty*, 862 F.2d at 576).

To the extent that Shaikh also specifically requested that LMU provide him "double

time" on tests, rather than time and a half,[1] the district court did not err in determining that LMU

was reasonable to decline such a request after Shaikh had already failed two courses and had not

---

[1]It is not clear that Shaikh specifically requested this accommodation. He made reference in his letter of appeal to various recommendations from experts, including Dr. Guyer, but did not specifically mention "double time" or discuss the difference that he anticipated such an accommodation would make, as opposed to time and a half. (*See* Letter of Appeal, R. 11-1, ID 241 ("Dr. Guyer offers recommendations to help me succeed . . . ."); *id.* at 306 (letter from Dr. Guyer recommending "double time on all quizzes and tests," as well as a "decreased courseload").)

used the additional time given. As the district court correctly observed, Shaikh did not use all of the additional time provided to him under a time-and-a-half test-taking accommodation. For example, in the spring 2011 semester, Shaikh received failing grades in Molecular Fundamentals of Medicine II ("MFM-II") and Behavior Neuroscience ("BNS"). Shaikh completed his two MFM-II exams early, failing to use 36.5 minutes of his remaining time on his first MFM-II exam, which resulted in a grade of 54.45 percent, and 11.5 minutes of remaining time on his second MFM-II exam, which resulted in a grade of 65.93 percent. A passing grade was 70 percent. He similarly completed his first BNS exam 25 minutes early and received a grade of 64.37 percent and failed to use 9 minutes of remaining time on another BNS exam that resulted in a grade of 64.63 percent. Shaikh acknowledges that he did not use all the exam time given to him. Under these circumstances, even assuming he requested the accommodation and it was reasonable, Shaikh has not established a fact question on whether he would have successfully completed the requirements of the program with this accommodation. LMU is entitled to summary judgment in its favor.

## IV.

For these reasons, we affirm the judgment of the district court.