| | |
|---|---|
| JEFFREY PETER DATTO, PhD | Case No. 2021-00339JD |
| Plaintiff | Judge Patrick E. Sheeran |
| v. | Magistrate Robert Van Schoyck |
| | <u>DECISION</u> |
| THE OHIO STATE UNIVERSITY | |
| Defendant | |

{¶1} On June 15, 2022, Defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). Plaintiff did not file a response. On the same date, Defendant also filed a motion to transfer discovery conducted in the previous filing of this matter (Case No. 2019-00452JD) that was voluntarily dismissed by Plaintiff; Plaintiff did not file a response to this motion either and the motion is hereby GRANTED. The motion for summary judgment is now before the Court for a non-oral hearing pursuant to Civ.R. 56 and L.C.C.R. 4(D).

{¶2} Civ.R. 56(C) states, in part, as follows:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

*See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

**{¶3}** Plaintiff brings this action arising from his unsuccessful applications for admission into Defendant's College of Medicine. There is no dispute that Plaintiff submitted applications for the incoming classes of both 2016 and 2017 and was denied admission each time. Plaintiff's amended complaint raises claims for breach of contract (Counts I & VIII), violations of the Americans with Disabilities Act (ADA) (Counts II & III), retaliation in violation of the Rehabilitation Act and ADA (Counts IV & V), Negligent Infliction of Emotional Distress (Count VI), and Unjust Enrichment (Count VII).

**BREACH OF CONTRACT**

**{¶4}** Counts I and VIII of the amended complaint raise claims for breach of contract. "To prove a breach of contract claim, a plaintiff must show 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 10, 771 N.E.2d 874 (10th Dist.2002), quoting *Nilavar v. Osborn*, 137 Ohio App.3d 469, 483, 738 N.E.2d 1271 (2d Dist.2000). "Contracts can be express or implied." *Middleton v. United Church of Christ Bd.*, 483 F.Supp.3d 489, 502 (N.D.Ohio 2020). "'In express contracts, assent to the terms of the contract is actually expressed in the form of an offer and an acceptance.'" *Barlay v. Yoga's Drive-Thru*, 10th Dist. Franklin No. 03AP-545, 2003-Ohio-7164, ¶ 8, quoting *Stepp v. Freeman*, 119 Ohio App.3d 68, 74, 694 N.E.2d 510 (2d Dist.1997). "By contrast, the parties' meeting of the minds in implied-in-fact contracts 'is shown by the surrounding circumstances, including the conduct and declarations of the parties, that make it inferable that the contract exists as a matter of tacit understanding,' and an agreement was intended." *Id.*, quoting *Stepp* at 74.

**{¶5}** With regard to Count I of the amended complaint, Plaintiff claims that Defendant "offered to the Plaintiff the potential ability to be fairly and non-discriminatively screened and evaluated for acceptance into medical school in exchange for filling out

their application and paying their application fee." (Amended Complaint, ¶ 52.) Plaintiff further claims that he "accepted that offer and in consideration filled out the requested application and paid the application fee" which "established an implied contract" between the parties. (*Id.* at ¶ 53-54.) According to Plaintiff, "[t]his contract was breached when Plaintiff was discriminatively screened and evaluated." (*Id.* at ¶ 56.) As Plaintiff claims to have had an implied, not an express, contract with Defendant, he did not attach any written instrument to the amended complaint pursuant to Civ.R. 10(D)(1).

{¶6} As Defendant notes in its motion, the amended complaint does not set forth facts to establish there was a meeting of the minds as necessary to show assent to an implied contract between the parties. Defendant also correctly notes that while it is well-established that the relationship between an enrolled student and a college or university is contractual in nature, it is apparent from the amended complaint that Plaintiff was not enrolled with Defendant as a student but was instead an applicant seeking to enroll. *See Merlitti v. Univ. of Akron*, 10th Dist. Franklin No. 19AP-357, 2019-Ohio-4998, ¶ 22-23. Indeed, Plaintiff admitted in response to a request for admission in discovery that he never enrolled, paid tuition, or attended classes with Defendant. (Request for Admission No. 3.) Reasonable minds can only conclude that Plaintiff cannot establish the existence of an implied contract between the parties. And, even if he had come forward with evidence of an implied contract, he still did not produce evidence that Defendant breached any specific, enforceable promise.

{¶7} With regard to Count VIII of the amended complaint, Plaintiff claims that Defendant breached the "College of Medicine Admissions Non-Discrimination Policy" found in its "admissions committee handbook". (Amended Complaint, ¶ 112-113.) According to the amended complaint, the "admissions committee handbook is a contract formed with applicants who pay OSU's application fee." (*Id.* at ¶ 112.) Plaintiff failed to attach a copy of the admissions committee handbook to his amended complaint pursuant to Civ.R. 10(D)(1). While the terms of the contractual relationship between a college or

university and an enrolled student may be found in a handbook, as stated before, it is clear that Plaintiff never enrolled as a student with Defendant. Plaintiff also fails to allege facts—much less come forward with evidence—tending to establish that the parties agreed the admissions committee handbook would constitute a legally binding agreement between them. "Without mutual assent, a handbook is merely a unilateral statement of rules and policies which creates no obligations or rights." *Taylor v. Black Gold Mgmt. Co.*, 10th Dist. Franklin No. 09AP-209, 2009-Ohio-4848, ¶ 22.

**{¶8}** Finally, even if there were evidence of a binding contract between the parties, as discussed below there is no evidence from which it could be inferred that Defendant unlawfully discriminated against Plaintiff.

**{¶9}** Accordingly, the only reasonable conclusion that may be drawn is that Plaintiff cannot prevail on his breach of contract claims.

**DISABILITY DISCRIMINATION (ADA)**

**{¶10}** In Count II of the amended complaint, Plaintiff brings a claim for disability discrimination under Title II of the ADA. Count III of the amended complaint raises a "failure to accommodate" claim under Title II of the ADA.

**{¶11}** "Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 452 (6th Cir.2008), quoting 42 U.S.C. 12132. "To establish a prima facie case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. Blue Ash*, 798 F.3d 338, 357 (6th Cir.2015). "A disabled person satisfies the 'otherwise qualified' requirement if she can meet a program's necessary requirements with

reasonable accommodation."  *Gati v. W. Kentucky Univ.*, 762 Fed.Appx. 246, 250 (6th Cir.2019).

{¶12} According to the amended complaint, Plaintiff "has the disability bipolar disorder, chronic recurrent depressions, or other equally serious mental illness disorder." (Amended Complaint, ¶ 59.)  For purposes of its motion only, Defendant assumes that Plaintiff is disabled and was excluded from participation in a program.  Defendant argues, however, that Plaintiff was "neither 'otherwise qualified' nor did he request a reasonable accommodation".  Defendant further argues that Plaintiff was not excluded from admission to the College of Medicine because of his disability.

{¶13} With regard to the 'otherwise qualified' requirement, Plaintiff claims in the amended complaint that he asked Defendant for two accommodations.  "First, he requested the accommodation to be interviewed." (*Id.* at ¶ 73.)  Second, "[h]e then asked to be allowed to be enrolled in [defendant's] school once he provided proper medical clearance and proof at his interview that his disability and treatments thereof disrupted his ability to perform the essential functions of a medical student at TJU, and that TJU was unwilling to accommodate his disability." (*Id.* at ¶ 74.)  It is Plaintiff's burden to prove that a requested accommodation was reasonable.  *Gati v. W. Kentucky Univ.*, 762 Fed.Appx. 246, 251 (6th Cir.).

{¶14} Defendant asserts that these requests do not pertain to how Plaintiff would perform as a medical student or fulfill the requirements thereof, as opposed to examples cited by Defendant that include having extra time to take exams or taking a reduced course load.  Rather, Plaintiff essentially asked that Defendant advance his application to the interview stage and ultimately grant him admission.  In other words, Plaintiff asked to be admitted to the College of Medicine, which is the very essence of his applying for admission in the first place.  Furthermore, as discussed below, Defendant has come forward with uncontroverted evidence that Plaintiff was not qualified for admission because of his previous matriculation at another medical school.  To the extent Plaintiff

sought for Defendant to waive or substantially change its qualifications or admissions standards, the ADA does "not require 'an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person.'" *Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 436 (6th Cir.1998), quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 413, 60 L.Ed.2d 980, 99 S.Ct. 2361 (1979); *see also Shaikh v. Lincoln Mem. Univ.*, 608 Fed.Appx. 349, 353 (6th Cir.2015). Additionally, "[c]ourts should afford deference to professional academic judgments concerning reasonable accommodations." *Johnson v. Washington Cty. Career Ctr.*, 470 Fed.Appx. 433, 437 (6th Cir.2012). Accordingly, reasonable minds can only conclude that Plaintiff did not request a reasonable accommodation as to make him 'otherwise qualified'.

**{¶15}** As to the reason why Defendant did not grant Plaintiff admission to its medical school, Defendant submitted an affidavit from Dr. Quinn Capers, IV, who avers that he presently serves as Defendant's Vice Dean for Faculty Affairs in the College of Medicine and that he previously served as Associate Dean of Admissions for the College of Medicine from 2009 to 2019. According to Dr. Capers, as Associate Dean of Admissions his "responsibilities included overseeing and guiding the application, interview, and selection process for applicants to The Ohio State University College of Medicine." (Affidavit, ¶ 4.)

**{¶16}** Dr. Capers explains that it is the policy of the College of Medicine "that an applicant who has previously matriculated at another medical school is not considered for admission" and that during his tenure as Associate Dean of Admissions the College of Medicine "never considered, granted an interview to, or awarded admission to an applicant who had previously matriculated at another medical school." (*Id.* at ¶ 5-6.)

**{¶17}** As Dr. Capers states, Plaintiff applied for admission to the College of Medicine in both 2015 and 2016 using the American Medical College Application Service, and his "application included information that he had previously matriculated and failed to

graduate from the Sidney Kimmel Medical College at Thomas Jefferson University." (*Id.* at ¶ 7-8.) Both of Plaintiff's applications for admission were denied "because he had previously matriculated at another medical school", according to Dr. Capers. (*Id.* at ¶ 17.) According to Dr. Capers, Plaintiff "was not denied admission to The Ohio State University College of Medicine because of any actual or perceived physical or mental disability." (*Id.* at ¶ 19.)

{¶18} As stated earlier, Plaintiff filed nothing in response to Defendant's motion for summary judgment. Moreover, in discovery Plaintiff admitted that he understood Defendant had a policy regarding medical school applicants who previously matriculated elsewhere, that Dr. Capers communicated the policy to him, and that he was "unaware of a single applicant to The Ohio State University College of Medicine, who, having been previously dismissed from another medical school, was awarded admission." (Deposition, pp. 50, 90; Request for Admission No. 6.) Plaintiff also admitted in his deposition that his MCAT score was below average relative to Defendant's matriculants and that his GPA was only average. (Deposition, p. 110.) It is also worth noting that, according to statistics set out in Dr. Capers' affidavit, the vast majority of applicants in both years when Plaintiff applied did not reach even the interview stage, let alone obtain admission to the College of Medicine.

{¶19} From the uncontroverted evidence submitted by Defendant, reasonable minds can only conclude that Plaintiff was not denied admission to the College of Medicine because of a disability.

{¶20} Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's claims under the ADA.

**RETALIATION (Rehabilitation Act & ADA)**

{¶21} In Counts IV and V of the amended complaint Plaintiff asserts claims of retaliation under, respectively, Section 504 of the Rehabilitation Act and Title V of the

ADA. Specifically, Plaintiff claims that Defendant denied him admission to its College of Medicine because of lawsuits that he brought several years earlier against Thomas Jefferson University under both the Rehabilitation Act and the ADA.

{¶22} "Both the ADA and Section 504 prohibit retaliation against any individual because of his or her opposing practices made unlawful by the Acts or otherwise seeking to enforce rights under the Acts." *A.C. v. Shelby Cty. Bd. of Ed.*, 711 F.3d 687, 696 (6th Cir.2013). "The Acts have a similar scope and aim; for purposes of retaliation analysis, cases construing either Act are generally applicable to both." *Id.* at 697.

{¶23} A claim of retaliation based on indirect evidence requires a plaintiff to initially "establish that: (1) she engaged in activity protected under the ADA; (2) Defendant knew of this protected activity; (3) Defendant then took adverse action against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Johnson v. Washington Cty. Career Ctr.*, 982 F.Supp.2d 779, 791 (S.D.Ohio 2013). "If the plaintiff meets this burden, then the onus shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse * * * action." *Barlia v. MWI Veterinary Supply, Inc.*, 721 Fed.Appx. 439, 450 (6th Cir.2018). "In the event this occurs, the burden shifts back to the plaintiff to show 'that the proffered reason for the action was merely * * * pretext[.]'" *Id.*, quoting *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir.1997).

{¶24} Defendant argues that, whether or not Plaintiff may be able to establish the other elements of a prima facie case, he cannot establish a causal connection between Defendant's decision to deny him admission and any protected activity he engaged in several years earlier in suing Thomas Jefferson University. According to the affidavit from Dr. Capers, Plaintiff was denied admission to the incoming classes of 2016 and 2017 because he had previously matriculated at another medical school. (Affidavit, ¶ 11, 17.) Dr. Capers specifically avers that Plaintiff "was not denied admission to The Ohio State

University College of Medicine because he had engaged in litigation against his former medical school, Thomas Jefferson University." (*Id.* at ¶ 20.)

{¶25} Plaintiff claims that Dr. Capers told him "the reason Plaintiff is not being accepted into medical school is because he sued TJU" (Amended Complaint, ¶ 83), yet Plaintiff admitted in discovery that when he applied for admission to the 2016 incoming class he did not disclose that he had previously sued Thomas Jefferson University. (Request for Admission No. 8.) It was only when he applied for the second time, for admission to the 2017 incoming class, that he disclosed the prior litigation, and after being denied for the second time he and Dr. Capers had the alleged conversation. (Deposition, p. 126.)

{¶26} "A plaintiff satisfies the element of causation when he produces evidence from which an inference can be drawn that the adverse action would not have been taken in the absence of the protected conduct." *Hilbert v. Ohio Dept. of Transp.*, 84 N.E.3d 301, 2017-Ohio-488, ¶ 42 (10th Dist.). In this case, Defendant has identified evidence demonstrating that it denied Plaintiff admission to the College of Medicine because he previously matriculated at another medical school, consistent with its policy against granting admission to such applicants. Defendant also provided evidence that the fact of Plaintiff's previous litigation several years earlier against Thomas Jefferson University was not disclosed to Defendant the first time he applied.

{¶27} When a properly supported motion for summary judgment is made, "the nonmoving party may not rest upon the mere allegations or denials contained in the pleadings but must come forward with specific facts demonstrating a genuine issue of fact for trial." *Dubenion v. DDR Corp.*, 10th Dist. Franklin No. 15AP-915, 2016-Ohio-8128, ¶ 11, citing Civ.R. 56(E).

{¶28} Construing the evidence most strongly in Plaintiff's favor, reasonable minds can only conclude that Plaintiff cannot prove that Defendant would have admitted him to the College of Medicine if not for the legal action he took against Thomas Jefferson

University. The uncontroverted evidence is that Defendant's policy is to not admit applicants who previously matriculated at another medical school, and during the ten years that Dr. Capers served as Associate Dean of Admissions no such applicants were admitted. Moreover, the evidence demonstrates that the fact of Plaintiff's previous litigation against Thomas Jefferson University was only disclosed to Defendant in connection with his second application for admission. In short, Plaintiff has not come forward with evidence from which it could be inferred that his being denied admission to the College of Medicine would not have occurred but for any protected conduct he engaged in by suing Thomas Jefferson University several years earlier.

{¶29} Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's claims of retaliation.

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

{¶30} For Count VI of his amended complaint, Plaintiff asserts a claim for negligent infliction of emotional distress arising from Defendant's decision not to grant him admission to its medical school. But, as Defendant points out in its motion, Plaintiff's claim for negligent infliction of emotional distress fails as a matter of law because Plaintiff does "not allege he either witnessed or experienced a dangerous accident or was subjected to an actual physical peril." *Kanu v. Univ. of Cincinnati*, 10th Dist. Franklin No. 18AP-517, 2018-Ohio-4969, ¶ 14, citing *Paugh v. Hanks*, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983); *see also Prysock v. Bahner*, 10th Dist. Franklin No. 03AP-1245, 2004-Ohio-3381, ¶ 12 ("a plaintiff claiming emotional distress without contemporaneous physical injuries must demonstrate that he or she was in fear of physical consequences to his or her person."). Accordingly, Defendant is entitled to judgment on Plaintiff's claim for negligent infliction of emotional distress.

**UNJUST ENRICHMENT**

**{¶31}** In Count VII of the amended complaint, Plaintiff claims that Defendant was unjustly enriched by his payment of an application fee (he does not identify the dollar amount) for his second application for admission, i.e. for the incoming 2017 class. Plaintiff alleges that the Director of Admissions "encouraged him to apply again and 'plead his case'", and also told him that "a special committee would be formed that had members of the admissions committee on it and they would decide if Plaintiff would receive an interview or not." (Amended Complaint, ¶ 103, 104.)

**{¶32}** "A cause of action for unjust enrichment arises from a contract implied in law or quasi-contract." *Longmire v. Danaci*, 2020-Ohio-3704, 155 N.E.3d 1014, ¶ 32 (10th Dist.). "The elements of a cause of action for unjust enrichment are: (1) a benefit conferred by the plaintiff on the defendant, (2) knowledge of the benefit by the defendant, and (3) retention of the benefit by the defendant in circumstances where it would be unjust to do so." *Lundeen v. Smith-Hoke*, 10th Dist. Franklin No. 15AP-236, 2015-Ohio-5086, ¶ 51, citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). "In an unjust enrichment claim "'[i]t is not sufficient for the plaintiffs to show that [they have] conferred a benefit upon the defendants. [Plaintiffs] must go further and show that under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the defendants to retain the benefit.'"" *Liberty Mut. Ins. Co. v. Three-C Body Shop, Inc.*, 10th Dist. Franklin No. 19AP-775, 2020-Ohio-2694, ¶ 10, quoting *United States Health Practices v. Blake*, 10th Dist. Franklin No. 00AP-1002, 2001 Ohio App. LEXIS 1291 (Mar. 22, 2001), quoting *Katz v. Banning*, 84 Ohio App.3d 543, 552, 617 N.E.2d 729 (10th Dist.1992).

**{¶33}** Defendant argues that, like other applicants to the College of Medicine, Plaintiff's application fee only entitled him to consideration for admission and did not entitle him to an interview or admission, and that under such circumstances it was not unjust for Defendant to retain the application fee.

{¶**34**} Whereas Plaintiff failed to come forward with any evidence or argument in support of his claim, the uncontroverted evidence submitted by Defendant is that Defendant made an academic decision, consistent with its policy on the matter, not to admit Plaintiff based upon his prior matriculation at another medical school. "The decision to grant or deny admission to a student is a quintessential matter of academic judgment. Courts have long recognized that matters of academic judgment are generally better left to the educational institutions than to the judiciary and have accorded great deference where such matters are at issue." *Mangla v. Brown Univ.*, 135 F.3d 80, 84 (1st Cir.1998); *see also Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 308, 604 N.E.2d 783 (10th Dist.1992). There is no evidence that Defendant's decision to deny Plaintiff admission was made in bad faith or represented a substantial departure from accepted academic norms as to demonstrate an absence of professional judgment. In other words, the evidence demonstrates that in exchange for his payment of an application fee, Plaintiff received from Defendant a decision on his application that was exercised with professional judgment. Under such circumstances, the only reasonable conclusion that may be drawn is that Defendant's retention of the application fee was not unjust.

**CONCLUSION**

{¶35} Based upon the foregoing, the Court concludes that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of Defendant.

PATRICK E. SHEERAN
Judge

[Cite as *Datto v. Ohio State Univ.*, 2022-Ohio-3650.]

| | |
|---|---|
| JEFFREY PETER DATTO, PhD | Case No. 2021-00339JD |
| Plaintiff | Judge Patrick E. Sheeran<br>Magistrate Robert Van Schoyck |
| v. | |
| | <u>JUDGMENT ENTRY</u> |
| THE OHIO STATE UNIVERSITY | |
| Defendant | |

{¶36} Based upon the foregoing, the Court concludes that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. As a result, Defendant's motion for summary judgment is GRANTED and judgment is hereby rendered in favor of Defendant. All previously scheduled events are VACATED. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK E. SHEERAN
Judge

Filed September 20, 2022
Sent to S.C. Reporter 10/13/22