**Rosemary E. GOODWIN, Plaintiff,**

v.

**KEUKA COLLEGE, A Privately Owned Corporation, Dr. Arthur Kirk, in his official capacity as President of Keuka College, Keuka Park, New York, and Peter Talty, M.S., O.T.R., in his official capacity as chair of the Division of Occupational Therapy, Keuka College, New York, Defendants.**

**No. 94–CV–6291T.**

United States District Court,
W.D. New York.

June 30, 1995.

---

1. The Court has considered all of the defendants' other arguments and finds them to be without merit.

Frederick M. Stanczak, Legal Services of Central New York, Inc., Syracuse, NY, for Rosemary E. Goodwin.

Marion Blankopf, Nixon, Hargrave, Devans & Doyle LLP, Rochester, NY, for Arthur Kirk, Peter Talty M.S. OTR and Keuka College.

## DECISION and ORDER

TELESCA, District Judge.

### INTRODUCTION

Plaintiff Rosemary E. Goodwin brings this action under 29 U.S.C. § 794 (the Rehabilitation act of 1973), 42 U.S.C. § 12189 (the Americans with Disabilities Act of 1990), and various common law contractual causes of action alleging that the defendants, Keuka College, Dr. Arthur Kirk, and Peter Talty, failed to make reasonable accommodations for her as a handicapped individual that would have allowed her to complete her educational training at Keuka College.

Defendants move for summary judgement on the grounds that (1) plaintiff has failed to state a prima facie case against the college under either of the federal acts under which she proceeds, and (2) plaintiff's state law contract claims are insufficient as a matter of law. Specifically, defendants argue that the plaintiff failed to notify the College of her disabilities until after she was terminated from her program of study.

### BACKGROUND

In 1988, plaintiff Rosemary Goodwin enrolled in the Occupational Therapy Program at Keuka College. The school requires the successful completion of 120 credit hours and two graded field placements prior to graduation from the program. Conversely, if a

student fails two field placements, he or she is automatically terminated from the program. On August 31, 1992, plaintiff was placed at the St. Joseph's Health Center ("St. Joseph's"). Prior to this fourth and ultimately final assignment, plaintiff had failed one assignment, passed another, and was unable to complete her third assignment due to a back injury. On September 21, 1992, after an argument with her supervisor at St. Joseph's, the plaintiff, without permission, left her field assignment and never returned. On October 9, 1992 the plaintiff directed a letter to Julie Brocklehurst–Woods, a field placement coordinator for Keuka College, explaining that she would soon be evaluated to determine whether or not she had a learning disability. Plaintiff also requested that the College make specific accommodations for her under the Rehabilitation and Americans with Disabilities Acts. On or about October 27, 1992, Ms. Brocklehurst–Woods and defendant Peter Talty responded to the plaintiff in a letter explaining that plaintiff had already been terminated from the program for the dual reasons of leaving her work site and failing two placements. On November 19, 1992 plaintiff underwent psychological testing performed by Dr. Michael L. Boucher to determine whether or not plaintiff suffered from a learning disability. On November 20, 1992, Dr. Boucher issued a report to the plaintiff which stated that "Diagnostically, test results suggest facets of an Atypical Affective Disorder with accompanying anxious, atypically depressed, irritable, dissociative, and conversion features. There is also some possibility of additional features of a Mixed Personality Disorder." On March 16, 1993, plaintiff's attorney forwarded Dr. Boucher's report to defendant Talty, and requested that Keuka College reconsider its decision to terminate plaintiff from the program. On May 26, 1993 defendant Talty sent a letter to plaintiff's attorney stating that the college would not reconsider its decision. On June 14, 1994, plaintiff filed the instant action.

### DISCUSSION

#### I.  *Motion For Summary Judgement.*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgement "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." When considering a motion for summary judgement, all inferences and ambiguities must be resolved in favor of the party against whom summary judgement is sought. *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223 (2d Cir.1994). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgement is appropriate. *Id.* at 1224.

Defendants move for summary judgment on grounds that the plaintiff has failed to state a claim under either the Rehabilitation Act of 1973 or the American with Disabilities Act of 1990. Defendants argue that because the plaintiff failed to even allege that she had a learning disability until after she was terminated from the Occupational Therapy Program, she can not, as a matter of law, prove that the college terminated her from the program because of her disability or that the college failed to make reasonable accommodations for her.

Because the court finds that there is no question of fact as to when plaintiff notified defendants of her alleged disability, and that there is no dispute that this notification took place after plaintiff had been terminated from the Occupational Therapy Program, plaintiff, as a matter of law, has failed to state a cause of action under the Rehabilitation Act or the ADA. Summary judgement is therefore granted to the defendants on those claims. Additionally, because plaintiff has failed to state a federal cause of action, the court hereby dismisses the remainder of plaintiff's claims, all of which are based on state law.

#### II.  *Plaintiff has failed to state a cause of action under either the Rehabilitation Act of 1973 or the ADA of 1990.*

#### A.  *The Rehabilitation Act of 1973.*

■  Section 794 of the Rehabilitation Act of 1973 states in relevant part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. 794 (1985). For a plaintiff to state a prima facie case of discrimination under the act, she must show that: "1) she is a handicapped person under the Act; 2) she is otherwise qualified to perform her job; 3) she was discharged because of her handicap; and 4) the employer is a recipient of Federal financial assistance." *Heilweil v. Mount Sinai Hospital*, 32 F.3d 718 (2d Cir.1994); *cert. denied*, — U.S. ——, 115 S.Ct. 1095, 130 L.Ed.2d 1063. While *Heilweil* involved an employment discrimination claim, the Second Circuit's analysis and interpretation of the statute applies equally to the discrimination claims made in this case. It is therefore necessary for the plaintiff in this case to establish all four elements of her cause of action before she may proceed.

■■■ Without passing on the other three elements, this court finds as a matter of law that plaintiff has not and can not satisfy the third element of her claim, that she was discharged because of her handicap. For a school or employer to discharge a person based on his or her handicap, the school or employer must be aware that that person actually has a handicap. *See, Landefeld v. Marion General Hosp., Inc.*, 994 F.2d 1178, 1181–1182 (6th Cir.1993) (finding that plaintiff "did not, and could not" meet four prong test where plaintiff could not establish that hospital board of directors had any knowledge of plaintiff's disability prior to terminating him). Furthermore, the employer or school making the decision can only be held responsible for information it had at the time the decision was made. "[A]n employer is only responsible for employment decisions based on information available to it when it decides." *Heilweil*, 32 F.3d at 724. The same can be said of a school's decision to take academic action against a student: the school can only be charged with making its decision based on the information available to it at that time.[1]

■■■ In order to determine whether or not Keuka College took action against the plaintiff solely on the basis of her alleged disability, it is necessary first to determine whether or not the College had knowledge of the alleged disability, and if so, when was that knowledge acquired. Generally, an issue such as this would present a genuine issue of material fact and thus making the grant of summary judgment inappropriate. However, in the instant case, there is no question as to when Keuka College was informed of plaintiff's alleged disability. According to Plaintiff's Amended Complaint and Response to Defendants' Statement of Material Facts not in Dispute, Keuka College was not informed of plaintiff's alleged disability until *after she had been terminated from the program*. Response to Defendant's Statement of Material Facts at ¶ 4. Plaintiff concedes that defendants did not receive notice of her alleged disability until March 16, 1993, some five months after plaintiff had been terminated from the program. Amended Complaint at ¶ 42. Plaintiff attempts to qualify her admission by arguing that the College improperly terminated her from the Occupational Therapy Program by accepting an evaluation report from plaintiff's first field placement in 1991 that was not in compliance with the school's numerical evaluation system. The complained of evaluation used a "satisfactory/unsatisfactory" system rather than a numerical scale of one to five. However, as the school's field placement supervisor explained, the "S/U" methodology used on the form was completely appropriate for mid-term evaluations, of which this was one. (Reply Affidavit of Julie Brocklehurst–Woods at ¶ 2) Perhaps a numerical evaluation was never completed because, as the plaintiff herself admits, without explaining why, the internship was ended "prior to its completion." (Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion for Summary

---

1. It should be noted that in this case, dismissal of a student from the occupational therapy program is automatic upon failing a second field placement. The termination, therefore, does not involve a true decision making process.

Judgment at p. 2). Moreover, this collateral attack on plaintiff's failing grade recorded in 1991 is both inappropriate and time barred. A student may not challenge a particular grade or other academic matter absent demonstrated bad faith, arbitrariness, capriciousness, irrationality, or a constitutional or a statutory violation. *Susan M. v. New York Law School*, 76 N.Y.2d 241, 245, 557 N.Y.S.2d 297, 556 N.E.2d 1104 (1990). Furthermore, an action against a school for arbitrary and capricious conduct may be brought to court only in an Article 78 proceeding, and is subject to a four month statute of limitations period. *See, Shields v. School of Law of Hofstra University*, 77 A.D.2d 867, 431 N.Y.S.2d 60 (2d Dept.1980); N.Y.CPLR Law § 217 (McKinney 1990).

The plaintiff, however, further attempts to obfuscate the issue of when the college first received notice of her alleged disability by claiming that defendants were "made aware of her disability by receipt of plaintiff's letter of October 9, 1992" and that Keuka College issued Ms. Goodwin's final grade report "after having received notice of the evaluation by Dr. Boucher in October of that year." Amended Complaint at ¶¶ 44, 45. However, it is clear from the October 9 letter that plaintiff merely states that she is "currently being considered for an evaluation" by the Learning Disability Association. Affidavit of Rosemary Goodwin, Exhibit G at p. 4. Plaintiff's misrepresentation that Keuka College had notice of Dr. Boucher's evaluation in October of 1992 is even more egregious considering that no mention of him is made in plaintiff's letter, and that he did not even conduct his examination until November 19, 1992. Affidavit of Rosemary Goodwin, Exhibit G, Exhibit H.

Similarly, plaintiff's allegations that Keuka had notice of her disabilities prior to issuing her final grade report, and therefore, should have made accommodations for her based on that knowledge misses the mark on two points. First, as demonstrated above, Keuka did not have knowledge of plaintiff's alleged disability until March of 1993. What Keuka did have knowledge of in October of 1992 was that plaintiff was seeking testing to determine whether or not she had a disability.

Secondly, Plaintiff was terminated from her program automatically because of her failure of the second field placement, and not upon receipt of her grades in December. *See*, October 27 Letter from Julie Brocklehurst–Woods and Peter Talty to Rosemary Goodwin included in Exhibit C of Affidavit of Julie Brocklehurst–Woods. According to Keuka policy, a student is assigned a failing grade automatically upon leaving a fieldwork site without permission of a supervisor. Additionally, "[i]f a student fails two placements the student will be terminated from the occupational therapy program." *Id.* Plaintiff has not alleged nor offered any evidence that this policy as stated by Brocklehurst–Woods and Talty is factually incorrect. It is clear then, that plaintiff failed her assignment on September 21, 1992, the day she walked out on her assignment and in accordance with Keuka's stated policy, plaintiff was terminated from the Occupational Therapy Program on the same day.

Plaintiff, in her final attempt to demonstrate that the defendants had knowledge of her disability when they made their decision to terminate her from the program, argues that defendants were on notice of her disability when she requested readmission to the program. According to plaintiff, the defendants were obligated to reconsider her readmission, and in doing so, were required to take into account her newly alleged disability. However, as counsel for the defendant aptly points out, none of the cases cited by plaintiff supports the proposition that a nondiscriminatory decision can be turned into a discriminatory one simply by asking to have that decision reconsidered. Indeed, the two cases cited by the plaintiff, *Doe v. New York University*, 666 F.2d 761 (2d Cir.1981) and *Park v. University of North Carolina*, No. 93–750–CV–5–D (E.D.N.C.1994) are distinguishable in that those cases involved questions of fact as to whether or not the students involved had recovered sufficiently to be readmitted to their schools. Neither case stands for the proposition that a student who is automatically terminated from a program who brings subsequent evidence of an alleged learning disability is entitled under federal law to reconsideration of that decision based on new evidence. In the instant case, plain-

tiff's cause of action arose on September 21, 1992, the date on which she was terminated. It did accrue when the college decided not to consider her readmission requests. *See, Morse v. University of Vermont,* 973 F.2d 122, 125 (2d Cir.1992).

Because Keuka had no knowledge of plaintiff's alleged disability at the time she was terminated from the Occupational Therapy Program, plaintiff can not as a matter of law show that she was terminated from the program solely because of her disability. Plaintiff has therefore failed to state a prima facie case under the Rehabilitation Act of 1973.

B. *The Americans with Disabilities Act of 1990.*

 Section 12189 of the Americans with Disabilities act of 1990 states:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189. For a school to be able to make reasonable accommodations for a student, it must have knowledge that such accommodations are required. Because, as discussed above, plaintiff has failed to show that defendants knew of her disability at the time she was terminated from the program, plaintiff has failed to state a claim under the Americans with Disabilities Act of 1990.

III. *Plaintiff's failure to state a federal cause of action.*

Because plaintiff's remaining claims are based on common law, and because she has failed to state a federal cause of action, the court, in its discretion, may dismiss plaintiff's state law claims where "considerations of judicial economy, convenience, and fairness to the parties" require. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Additionally, a district court may decline to exercise jurisdiction over common law claims where the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. 1367(c)(3). Therefore the plaintiff's remaining state and common law claims are dismissed.

### CONCLUSION

Based on the foregoing, defendants' motion for summary judgment with respect to plaintiff's claims under the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 is granted, and plaintiff's remaining claims, all of which are based on state statutory or common law, are dismissed.

ALL OF THE ABOVE IS SO ORDERED.