Lisa **KALTENBERGER,**
**Plaintiff–Appellant,**

v.

**OHIO COLLEGE OF PODIATRIC MEDICINE, Defendant–Appellee.**

No. 97–4041.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 29, 1998.

Decided Dec. 9, 1998.

Edward G. Kramer (argued and briefed), Colleen M. O'Toole (briefed), Kramer & Niermann, Cleveland, OH, for Plaintiff–Appellant.

John Kluznik (briefed), William H. Baughman, Jr. (argued and briefed), Weston, Hurd, Fallon, Paisley & Howley LLP, Cleveland, OH, for Defendant–Appellee.

Before: GUY, CLAY, and GILMAN, Circuit Judges.

## OPINION

RALPH B. GUY, JR., Circuit Judge.

Plaintiff, Lisa Kaltenberger, appeals from the district court's entry of summary judgment in favor of defendant Ohio College of Podiatric Medicine (College) in this disability discrimination case. Plaintiff alleged that the College dismissed her from the program without reasonably accommodating her learning disability, in violation of § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182; and the Ohio Civil Rights Act, Ohio Rev.Code § 4112.022. Plaintiff has been diagnosed with Attention Deficit–Hyperactivity Disorder (ADHD). On appeal, plaintiff claims that the district court erred in granting summary judgment because there was a question of fact on the issue of reasonable accommoda-

tion. Our review of the record convinces us that no error occurred and we affirm.

## I.

The defendant College is an accredited graduate school with the mission of educating and training doctors of podiatric medicine through a standard four-year curriculum. The College also offers a five-year curriculum to students with special academic and personal needs that require additional time and assistance to make the transition to a professional medical education. Plaintiff enrolled in the four-year program and began classes in August 1994.

On September 14, 1994, after reading a magazine article on adult attention deficit disorder, plaintiff told an academic counselor at the College that she believed she had ADHD. Plaintiff was referred to Case Western Reserve University Counseling Services (Counseling Services), which provided medical and mental health services for students of the Ohio College of Podiatric Medicine. After plaintiff was evaluated and tested in October 1994, the Counseling Services concluded there was no clear evidence of a learning disability, but offered her individualized counseling, and recommended that she seek some assistance with study skills. Plaintiff claims that because of this "mis-diagnosis" she did not seek any reasonable accommodations from the College until the end of the second semester.[1] Plaintiff failed her biochemistry class at the end of her first semester and was placed on academic probation.

Plaintiff had difficulties during the second semester as well. On May 8, 1995, about a week before the final examination in her physiology class, plaintiff gave the Dean of Academic Affairs, Dr. Vincent Hetherington, a handwritten note from Kornelia C. Solymos, M.D. The short note indicated only that plaintiff had been under her care for ADHD since April 21, 1995, and they were "trying different medications." Hetherington informed plaintiff that he could not accept this note because there was no indication of any basis for the diagnosis or Solymos' credentials for evaluating learning disabilities. A week later, on May 15, 1995, plaintiff took the final exam in physiology. She failed the course with the lowest grade out of 124 students based on her scores from four exams.

After the end of the semester, plaintiff provided Hetherington with a report by a clinical psychologist, Kent Rozel, Ph.D., who evaluated plaintiff, concluded she had ADHD and listed six recommended accommodations. At that time, plaintiff also permitted the Counseling Services to send its earlier report to Hetherington. After receiving these conflicting opinions, Hetherington referred plaintiff for evaluation by an independent clinical psychologist, Jill Winegardner, Ph.D. In her report dated June 29, 1995, Winegardner indicated that plaintiff had impaired attention span and organization inconsistent with her generally average intellectual abilities, which suggested "the presence of a diagnosable learning disorder." Winegardner also listed five recommended accommodations.

Before Winegardner conducted her evaluation, the College had dismissed plaintiff from the program for failing two courses. Plaintiff appealed the decision on the grounds that she had been diagnosed with ADD.[2] The Academic Appeals Committee, of which Hetherington was a member, considered the opinions and recommendations of both Rozel and Winegardner and reinstated plaintiff to the five-year program (which had a lighter course load during the first two years). The College required that plaintiff retake biochemistry and physiology and advised her that failure of any course would result in summary dismissal without the right to appeal. In addition to placing plaintiff in the five-year program, Hetherington informed her course coordinators that they were expected to provide plaintiff with the following accommodations: (1) individualized tutoring in each class; (2) a place to sit in the front of the class; (3) permission to tape lectures; (4) extra time on tests; and (5) the opportunity

---

1. The Counseling Services report is dated January 30, 1995, but was not released to the College until May 31, 1995.

2. Although plaintiff was diagnosed with ADHD, her academic appeal repeatedly referred to her condition as ADD.

to take the tests in a separate room from other students. He also asked plaintiff to meet with an academic counselor and attend a study skills training program.

Plaintiff asked to retake biochemistry during the five-week summer session. Based upon his training and experience in podiatric medicine, consideration of the reports of Rozel and Winegardner, knowledge of plaintiff's situation and the importance of biochemistry as a foundation for an education in podiatric medicine, Hetherington did not permit plaintiff to take the abbreviated remedial course and required that she take the full four-month course during the fall semester.

In the fall of 1995, plaintiff had only three courses, including the repeat of the biochemistry course. Plaintiff did not meet with an academic counselor, did not attend small group tutoring sessions, and did not ask any of her instructors for individual tutoring. After four examinations in biochemistry, plaintiff failed the course by one point and ranked 106 out of 116 students. Pursuant to its policy, the College did not allow any re-examinations by students who were repeating a failed course. As a result, plaintiff was not permitted to retake the final exam and was dismissed from the College in January 1996.

In August 1996, plaintiff filed this action and asked the district court, by way of a motion for a temporary restraining order and preliminary injunction, to order the College to allow her to take classes during the litigation. The request for injunctive relief was denied. The parties conducted discovery and the College filed a motion for summary judgment. On August 6, 1997, the district court granted the motion and entered judgment in favor of the College. Plaintiff filed this appeal.

## II.

We review de novo the district court's grant of summary judgment. *See, e.g., Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir.1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial is presented when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

To establish her claim that she was dismissed because of her ADHD in violation of the Rehabilitation Act, the ADA, or the Ohio Civil Rights Act, plaintiff must show that (1) she is handicapped or disabled as defined in each statute,[3] (2) she is "otherwise qualified" to continue in the program, and (3) she was dismissed from the program on the basis of her handicap or disability. *Andrews v. State of Ohio*, 104 F.3d 803, 807 (6th Cir.1997); *Ohio Civil Rights Comm'n v. Case W. Reserve Univ.*, 76 Ohio St.3d 168, 174, 666 N.E.2d 1376 (1996).[4] A handicapped or disabled person is "otherwise qualified" to participate in a program if she can meet its necessary requirements with reasonable accommodation. *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1034 (6th Cir.1995) (citing *Doherty v. Southern*

---

**3.** The College has not challenged plaintiff's claim that her ADHD constitutes a handicap or disability under each of the acts.

**4.** While claims under the ADA and the Rehabilitation Act are largely the same, the defendant must also receive federal funds to establish a claim under the Rehabilitation Act. *See McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459–60 (6th Cir.1997). Plaintiff

alleged and the College does not deny that it was a recipient of federal funds. In addition, defendant does not contest the district court's finding that the College was covered by the ADA's prohibition of discrimination in public accommodations, 42 U.S.C. § 12182. *See* 42 U.S.C. § 12181(7)(J) (postgraduate private schools, or other places of education, are considered public accommodations).

*College of Optometry,* 862 F.2d 570, 574–75 (6th Cir.1988)).

■ However, discrimination laws do not require "an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Southeastern Community College v. Davis,* 442 U.S. 397, 413, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). "[W]hile a grantee need not be required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones." *Alexander v. Choate,* 469 U.S. 287, 300, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985) (analyzing *Davis* ). Further, when reviewing the substance of academic decisions, courts "should show great respect for the faculty's professional judgment." *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). " 'University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.' " *Id.* at 225 n. 11, 106 S.Ct. 507 (quoting *Board of Curators, Univ. of Mo. v. Horowitz,* 435 U.S. 78, 96 n. 6, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (Powell, J., concurring)). Courts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement. *See McGregor v. Louisiana State Univ. Bd. of Supervisors,* 3 F.3d 850, 859 (5th Cir. 1993); *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 795 (1st Cir.1992). *See also Ohio Civil Rights Comm'n,* 76 Ohio St.3d at 179, 666 N.E.2d 1376.

■ The district court found no reasonable trier of fact could conclude that the College failed to reasonably accommodate plaintiff's disability. We agree. Plaintiff had already failed two courses in her first year of the program before she requested any specific accommodation, provided the College with Rozel's report, or permitted the Counseling Services to release its evaluation to the College. Based on the opinions and recommendations of Rozel and Winegardner, plaintiff was reinstated as a student in the five-year program. Further, nine of eleven recommended accommodations were offered to plaintiff. Despite the accommodations, including being allowed to take her exams in a separate room and having extra time to take them, plaintiff failed biochemistry a second time. As a result, plaintiff was dismissed from the program.

Plaintiff contends that the College denied her reasonable accommodation because (1) she was not permitted to take the abbreviated remedial summer biochemistry course and (2) she was not allowed to retake the exam after failing biochemistry for the second time. Plaintiff also argues that the College cannot rely on the fact that she did not request any accommodations until after the conclusion of her first year since the College was "involved" in causing the delay. Each of these arguments is without merit.

■ First, plaintiff wanted to take the summer course because it would have been her only course at the time and she could have received individualized instruction since there was only one other student. As we have noted "[t]he federal judiciary is ill equipped to evaluate the proper emphasis and content of a school's curriculum." *Doherty,* 862 F.2d at 576 (citing *Horowitz,* 435 U.S. at 89–91, 98 S.Ct. 948). It was Hetherington's professional judgment that plaintiff needed the full-length biochemistry course given her situation and the importance of biochemistry to her education in podiatric medicine. Right or wrong, we must defer to this considered academic judgment, especially since the College offered a variety of other accommodations to help plaintiff overcome her disability. Even after a full semester of biochemistry and despite other accommodations, plaintiff was unable to pass the course.[5]

---

5. Plaintiff did not attend many of the biochemistry lectures, but studied from tapes of the lectures, did not ask for individualized tutoring from the biochemistry professor and did not attend small group study sessions. Plaintiff suggests that she should have been permitted to take the remedial summer course because she felt embarrassed by the professor's demeaning comments when she asked questions in the large lectures during her first semester. There is no indication in the record that her problems with the biochemistry professor, who taught both the fall and summer courses, were caused by her ADHD.

Second, plaintiff concedes that permitting her to retake the biochemistry exam after failing the course for a second time would require the College to alter its standard policy. Plaintiff asserts that this policy should have been waived because she took the course the first time without any accommodation, but is not asking for any further accommodation in testing. The decision of the College not to waive this requirement and lower the standards for continued training in podiatric medicine is entitled to deference. We should only reluctantly intervene in academic decisions "especially regarding degree requirements in the health care field when the conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession." *Doherty*, 862 F.2d at 576 (citations omitted). We find that the College did not fail to reasonably accommodate plaintiff's learning disability by refusing to waive its policy regarding the retaking of examinations, especially in light of the other accommodations which were made for her.

Finally, plaintiff asserts that the College failed to reasonably accommodate her disability because it was "involved" in causing a delay in her diagnosis. However, the College was not obligated to provide accommodation until plaintiff had provided a proper diagnosis of ADHD and requested specific accommodation. That plaintiff told an academic counselor at the College that she thought she might have adult attention deficit disorder simply did not impose an obligation to offer accommodations. *See Goodwin v. Keuka College*, 929 F.Supp. 90, 94 (W.D.N.Y.1995) (no obligation to accommodate arose from knowledge that plaintiff was seeking testing for learning disability).[6] Moreover, the academic counselor acted appropriately in referring plaintiff for evaluation. Although the Counseling Services did not conclude plaintiff had ADHD, the evaluation did find plaintiff had difficulties and offered assistance. Nonetheless, plaintiff did not get further counseling, seek another

psychiatric evaluation, or even release the evaluation to the College until after she had already failed two courses. We reject plaintiff's assertion that the College owed plaintiff greater accommodations during her second year in the program because its health services provider failed to diagnose ADHD earlier. Nor was it unreasonable for Hetherington to reject the handwritten note of a medical doctor stating plaintiff was being treated for ADHD and require an authoritative diagnosis of the learning disability that had evaded detection all of plaintiff's life.

**AFFIRMED.**

---

6. Plaintiff's reliance upon the finding in *Bercovitch v. Baldwin School*, 964 F.Supp. 597, 603 (D.P.R.1997), that an obligation to accommodate a student's learning disability arose when the school was advised that the plaintiff "would be diagnosed shortly," is misplaced since the district court's decision was reversed in *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141 (1st Cir. 1998).