NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0420n.06

No. 19-6036

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 20, 2020
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MICHAEL DEANGELO, | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| VANDERBILT UNIVERSITY, | ) COURT FOR THE MIDDLE |
| | ) DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) |
| | ) |

BEFORE: CLAY, ROGERS, and DONALD, Circuit Judges

ROGERS, Circuit Judge. Michael DeAngelo had significant academic difficulties while he was a Master of Business Administration (MBA) student at Vanderbilt University's Owen Graduate School of Management. DeAngelo, who has Autism Spectrum Disorder, received numerous poor grades at Vanderbilt and exceeded the school's academic strike limit during his second year in the MBA program. In lieu of being immediately dismissed from the program, DeAngelo and Vanderbilt reached an agreement to allow him to withdraw. DeAngelo subsequently filed suit alleging that the school discriminated against him because of his disability in violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act. But he has failed to present evidence that he would have been able to meet the program's academic requirements had he been provided the promised reasonable accommodations.

Michael DeAngelo is a former MBA student at Vanderbilt's Owen School who has Autism Spectrum Disorder, which is sometimes referred to as Asperger's Syndrome. DeAngelo initially

received good grades, but his grades declined from his second semester onwards. DeAngelo exceeded Vanderbilt's academic strike limit during his second year in the program and ultimately chose to withdraw, rather than be dismissed from the school.

Vanderbilt's MBA program has four modules in each academic year, two modules per semester. Students receive grades of either Superior Pass (SP), High Pass (HP), Pass (P), Low Pass (LP), or Fail (F). The school's academic policy treats LP and F grades as academic strikes. A student receives one full academic strike if he receives an F in a class and half an academic strike if he receives an LP in a class. Under the school's policy, a student who accumulates "3 or more strikes at any time" or maintains a GPA below 3.0 is dismissed from the program.

DeAngelo enrolled in Vanderbilt's MBA program in Fall 2014. He received a 3.4 GPA during his first semester in the MBA program, but accrued 1.5 academic strikes during his second semester, the Spring 2015 semester. He received an LP in Financial Reporting and an F in International Financial Markets. DeAngelo's Financial Reporting professor explained that his LP grade was based on the fact that he "ha[d] not mastered the course material well," frequently missed class, scored the lowest on the mid-term and final exams, and ranked last in the class overall. DeAngelo's International Financial Markets professor explained that DeAngelo received an F because his performance on the course assignments demonstrated that he "ha[d] not mastered the material in the course" and "rather than contributing to the [class] discussion his comments were often distracting, of[f] topic, and occasionally rude." The International Financial Markets course required an element of group work, but DeAngelo did not work with any group. Instead, DeAngelo attempted to complete the work by himself. The professor took this into account and gave DeAngelo a "neutral grade" on the team evaluation portion of the course grade because he worked alone on class projects. DeAngelo received an average score of 34.5% on his individual

assignments in the course. The professor further commented that DeAngelo missed class and the professor questioned whether DeAngelo "ha[d] some type of sickness, perhaps depression," that could be interfering with his academic coursework.

DeAngelo's academic troubles at Vanderbilt's Owen School continued in the first semester of his second academic year, the Fall 2015 semester. DeAngelo received an LP in Data Management and Business Intelligence in Module I of the Fall 2015 semester, which meant that he received an additional half academic strike under the school's policy. The professor explained that DeAngelo had not mastered the course material, did not complete many of the course assignments, received a grade of 36 out of 100 on the final exam (whereas the class average on the final exam excluding DeAngelo's grade was 81 out of 100), and rarely attended class. DeAngelo had therefore accumulated 2.0 academic strikes at this point in his academic tenure at Vanderbilt.

Further, DeAngelo sent a series of profane and threatening emails to his professor in his Controversies and Debates in Business class in September 2015, during Module I of the Fall 2015 semester. DeAngelo stated in part that he "could kick the living crap out of this bastard [Professor] Barry." He included the school's Dean, Eric Johnson, and Assistant Dean, Kelly Christie, on these emails.

Subsequently, Vanderbilt's Equal Opportunity, Affirmative Action, and Disability Services reached out to DeAngelo to offer assistance in the event that DeAngelo felt "that [he had] a medical condition or medical conditions that r[o]se to the level of disabilities" and felt that he needed reasonable accommodations. DeAngelo responded "[n]ot that it is any of your business, I am autistic," but did not request any accommodations. He also stated, "I don't appreciate violent people accusing me of things and treating me like dirt." Vanderbilt's Disability Services Director then reached out to DeAngelo again, but he did not respond. The school ultimately suspended

DeAngelo for the remainder of the Fall 2015 semester because of his profane and threatening emails, and referred him to a psychologist.

The psychologist, Dr. David Sacks, diagnosed DeAngelo in November 2015 with Autism Spectrum Disorder, "requiring support for deficits in social communication . . . without accompanying intellectual or language impairment." The psychologist commented that DeAngelo appeared to be "highly intelligent and to possess a great degree of confidence in his abilities, which lie in concrete domains such as quantitative analysis and making predictions based on known data." In addition, the psychologist advised that "Michael would likely benefit from added support to gain explicit understanding of implicit or nuanced behavioral and social expectations, possibly through the provision of a peer coach or mentor." Partly in response to this diagnosis, Vanderbilt lifted DeAngelo's suspension and allowed him to return to the school in Module III during the Spring 2016 semester.

DeAngelo, his parents, and Vanderbilt discussed potential services to assist DeAngelo in his transition back to the MBA program. Vanderbilt suggested and agreed that Assistant Dean Kelly Christie "would be available to counsel DeAngelo" and that Dean Christie "would make sure that DeAngelo's professors were aware of DeAngelo's disability and educated about how to properly accommodate his disability."

Upon returning to Vanderbilt's Owen School, DeAngelo received another 1.5 academic strikes in Module III in the Spring 2016 semester. He received an F in Negotiation and an LP in Applied Investment Management. His Negotiation professor explained that DeAngelo did not properly complete two of the key assignments, accounting for 40% of his grade. Specifically, DeAngelo did not complete a "takeaway sheet," which accounted for 10% of his grade, and did not comply with the directions for the final paper, which accounted for 30% of his grade. The

final paper assignment tasked students "with carrying out a real world negotiation and analyzing the negotiation and [themselves] as a negotiator," but DeAngelo turned in "a paper summarizing characters from a video game" in lieu of the assigned project. DeAngelo's Negotiation professor also commented that DeAngelo's other written assignments were minimally completed, but stated that she gave him "more leeway on those." Further, DeAngelo's Applied Investment Management professor explained why he gave DeAngelo an LP in the course:

> In 38 years of teaching, I cannot recall a student like this. The first indication that something was amiss was when no group wanted Michael to be part of their team when the teams self-selected at the beginning of the mod. I cajoled a particularly good team into inviting him to join, and they graciously took him on. It is my understanding that he participated in team meetings but contributed little or no work to the team's work product. Scored 30 points on the final (second lowest in class). Average was 75, and median was 79.

Accordingly, DeAngelo had accumulated 3.5 academic strikes by the end of Module III in the Spring 2016 semester, exceeding the limit under Vanderbilt's policy. DeAngelo therefore faced dismissal based on his academic record.

Under Vanderbilt's academic policy, once a student meets or exceeds the academic strike limit, the student is notified and informed that he can appeal his dismissal to the Student Achievement Committee (SAC). If a student does not appeal, or if the appeal is unsuccessful, then the student is withdrawn from the school. Dean Christie notified DeAngelo on March 24, 2016, that he had exceeded the academic strike limit and informed him that the school would need to take action in accordance with its academic policy. Dean Christie reached out to DeAngelo again on April 6, 2016, about the fact that he had exceeded the academic strike limit and offered to meet with him and Dean Johnson to assist him with crafting an appeal statement. But DeAngelo never took her up on this offer. Instead, he asked if the notice was "an attempt to scare [him]," explained that he was appealing his grades, and informed Dean Christie that she would be contacted by his

lawyer. Several weeks later, on April 19, Vanderbilt sent another letter to DeAngelo explaining that he had exceeded the strike limit and that the SAC had recommended that he be dismissed from the MBA program.[1] The letter informed DeAngelo that he could submit a written appeal within seven days.

DeAngelo and his parents also met with Dean Christie and Dean Johnson on April 19. DeAngelo requested that he be allowed to withdraw from Vanderbilt's Owen School at the end of Module IV after his last exam in the Spring 2016 semester, rather than be dismissed immediately. Vanderbilt agreed to this request and this agreement was confirmed in writing.

Subsequently, DeAngelo brought this suit against Vanderbilt, alleging that the school violated the ADA and the Rehabilitation Act. DeAngelo alleges that his grades were the result of Vanderbilt's unlawful disability discrimination and its failure to provide him with reasonable accommodations. DeAngelo contends that his Autism Spectrum Disorder interfered with his ability to collaborate with other students and to communicate appropriately with his professors. DeAngelo asserts that Vanderbilt failed to notify and educate his professors about his disability, which led some professors to view his behavior in a negative manner and to give him poor grades as a result of their bias against him. In addition, DeAngelo claims that he was unfairly subjected to disparate treatment in Vanderbilt's enforcement of its academic strike policy.

After filing suit, DeAngelo discovered several emails in which Vanderbilt's faculty made derogatory or inappropriate statements about him. Professor Timothy Vogus, who did not give DeAngelo any LP or F grades, sent three disparaging emails. Professor Vogus referred to DeAngelo as a "huge show off" and claimed "his showing off always serves to illustrate how

---

[1] Vanderbilt differed slightly from its normal process in handling DeAngelo's case. Typically, the SAC does not meet until the student files an appeal. But Vanderbilt notified the SAC earlier in this situation because "there was a concern for the student's well-being and, in particular, a concern how the student would react to being told that they are being withdrawn from the program." The school therefore wanted to confirm that the SAC would "uphold the policy."

incredibly vacuous he actually is," called DeAngelo a "complete and total asshole," and stated "there is nothing worth taking seriously about this guy except that he needs help and has no business getting a degree from us." Also, Professor Robert Whaley, who gave DeAngelo an LP in Applied Investment Management in Module III in the Spring 2016 semester, wrote that "this guy never should have been admitted" and that "[i]t doesn't appear that he is going away anytime soon." Professor Whaley's email that DeAngelo should not have been admitted to Vanderbilt was apparently sent in January 2016, which is several months before Professor Whaley issued his final grade of LP for DeAngelo in Applied Investment Management.[2] Professor Whaley's other email, saying that it did not appear that DeAngelo was going away anytime soon, was apparently written after DeAngelo had exceeded the academic strike limit and had agreed to withdraw from the MBA program. Finally, Professor Jessica Kennedy, who gave DeAngelo an F in Negotiation in Module III in the Spring 2016 semester, emailed her colleague that "Michael's rants and this Trump thing have me acknowledging that a lot of Republicans really are Neanderthals." Professor Kennedy's email was apparently written after DeAngelo had submitted his coursework in her Negotiation course. DeAngelo claims that these statements demonstrate that his professors had an animus against him and were biased in giving him low grades.

Vanderbilt filed a motion to dismiss DeAngelo's complaint for failure to state a claim. Vanderbilt argued in its motion to dismiss that DeAngelo's complaint sought to challenge Vanderbilt's academic judgments and did not contain factual allegations that he was dismissed from the MBA program in violation of the ADA or Rehabilitation Act. To establish that an individual was dismissed from an academic program in violation of the ADA or Rehabilitation

---

[2] The actual emails are not in the record. DeAngelo has only made selective references to their contents and has not included any dates along with these emails. Vanderbilt asserts that this email from Professor Whaley is the only email that was sent prior to a professor's assigning a grade to DeAngelo. DeAngelo does not dispute this assertion.

Act, a plaintiff must show: "(1) [he] is handicapped or disabled as defined in each statute, (2) [he] is 'otherwise qualified' to continue in the program, and (3) [he] was dismissed from the program on the basis of his handicap or disability." *Kaltenberger v. Ohio Coll. Of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). Vanderbilt asserted that DeAngelo's complaint did not contain factual allegations that he was "otherwise qualified" to continue in Vanderbilt's MBA program, failed to allege that DeAngelo proposed a specific accommodation that would have allowed him to meet the MBA program's requirements had it been provided, and failed to allege that DeAngelo was dismissed from the MBA program on the basis of his disability.

In the parties' briefing on Vanderbilt's motion to dismiss, they attached materials that were not part of the complaint. This led the district court to convert the motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). The district court provided notice to the parties that it was converting the motion to a summary judgment motion, and the court discussed "the needs of the parties to adequately respond" during a teleconference. The court permitted limited discovery so that the parties could present all pertinent material to the converted motion and allowed supplemental briefing. Discovery had to be completed about six weeks after this order was issued and the parties' supplemental briefing was due several months after this order. The court specifically requested that the parties provide evidence explaining three "factual disputes" that were outside the scope of the pleadings: (1) the concept and relevance of modules; (2) DeAngelo's alleged requests to Vanderbilt for reasonable accommodations; and (3) documentation relevant to the alleged rushed review of DeAngelo's grades that led to his dismissal.

Following supplemental briefing, the district court granted Vanderbilt's converted summary judgment motion. The court determined that DeAngelo was not "otherwise qualified"

to remain in the MBA program, as his requests for accommodations would not have qualified him to continue in the program. Several of his requests for accommodations were easily dismissed as irrelevant to his suit, such as his request to potentially transfer institutions. But the court more extensively analyzed DeAngelo's allegation that his professors should have been notified of his disability and educated on how to appropriately accommodate him. The court examined the idea that his professors could have been informed that they should help DeAngelo find classmates who would be willing to work with him on group projects. While the record demonstrates that DeAngelo had difficulty finding teams that would work with him on group projects, the court concluded that there was not a question of fact regarding whether this specific accommodation would have made him qualified. Although DeAngelo did not work with a team to complete group projects in his International Financial Markets course and received an F before the school learned of his disability, the professor gave DeAngelo a "neutral grade" on the team evaluation portion of the course grade because he worked alone on class projects. The professor in this course explained that DeAngelo's grades on his individual assignments were extremely poor, he did not demonstrate an understanding of the course material, and he was frequently absent. The court reasoned that faculty assistance to aid DeAngelo find a team to work with on group projects would therefore not have made a difference because he did not receive a negative grade on this aspect of the course and received extremely low marks in the other aspects of the course. Also, DeAngelo's professor in his Applied Investment Management course, which DeAngelo took after the school was aware of his disability, did provide this support and helped DeAngelo join a team to complete group projects. Yet DeAngelo still received an LP in the course, scoring the second lowest grade on the final.

The district court also rejected DeAngelo's assertion that his F in Negotiation resulted from a "misunderstanding" about the final paper's requirements. The court determined that DeAngelo had not explained how any alleged misunderstanding related to his disability and had not demonstrated how any of the accommodations that he sought would have prevented his failing grade in the course. The court deferred to DeAngelo's professor's discretion in assessing the academic performance of students.

Because DeAngelo failed to establish that he was "otherwise qualified," the district court also rejected his disparate treatment claim. DeAngelo's inability to demonstrate that he was "otherwise qualified" meant that he could not establish a prima facie case of discrimination. Thus, DeAngelo failed the *McDonnell-Douglas* burden shifting analysis.

The district court accordingly granted Vanderbilt's converted summary judgment motion and dismissed DeAngelo's ADA and Rehabilitation Act claim. The court also denied DeAngelo's motion to review the magistrate judge's ruling denying his request to file another amended complaint while the converted summary judgment motion was pending.

DeAngelo now appeals the district court's decision. First, DeAngelo argues that the court should have analyzed the question of whether he was "otherwise qualified" under the motion to dismiss standard, not the summary judgment standard. Second, DeAngelo contends that he has provided sufficient support to demonstrate that he was "otherwise qualified" to continue in Vanderbilt's MBA program. Neither contention warrants reversal.

First, the district court correctly applied the summary judgment standard to the issue of whether DeAngelo was "otherwise qualified" to continue in Vanderbilt's MBA program. There is no genuine issue of material fact that DeAngelo was not "otherwise qualified" to remain in the program. DeAngelo has not presented evidence that he would have been able to meet the

program's academic requirements even if he had been fully provided with the promised reasonable accommodations.

The district court was correct in analyzing all aspects of Vanderbilt's converted motion under the summary judgment standard, including the issue of whether DeAngelo was "otherwise qualified." Although the district court specifically identified three issues and requested that the parties provide evidence regarding these issues in its order converting Vanderbilt's motion to dismiss to a motion for summary judgment, the court's order did not confine its conversion of Vanderbilt's motion to only these three issues. Instead, the court converted the entire motion to a summary judgment motion and permitted the parties to present all material relevant to the issue of whether DeAngelo was "otherwise qualified."

The district court converted Vanderbilt's motion to dismiss to a summary judgment motion pursuant to Federal Rule of Civil Procedure 12(d), not Rule 56(f)(3) as DeAngelo now argues. Rule 12(d) requires that district courts treat motions to dismiss as motions for summary judgment under Rule 56 if matters outside the pleadings are presented as part of the original motion and are not excluded by the district court. Fed. R. Civ. P. 12(d). Rule 56(f)(3), on the other hand, allows a court to consider summary judgment on its own after identifying material facts that may not be genuinely in dispute, subject to prior notice and a reasonable time for the parties to respond. Fed. R. Civ. P. 56(f)(3). But the court did not identify "material facts that may not be genuinely disputed" in its conversion order as occurs under Rule 56(f)(3). *Id.* Rather, the district court identified three "factual disputes" that were presented at oral argument and in the parties' briefing but that were outside the scope of the pleadings. The court's process was consistent with Rule 12(d), just as the court stated in the conversion order.

In converting Vanderbilt's motion to dismiss to a summary judgment motion pursuant to Rule 12(d), the district court was required to give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The court recognized and adhered to this requirement. The conversion order states that "the [c]ourt is permitting discovery, so [the] parties may present 'all the material that is pertinent' to the converted motion." The order goes on to request specifically that the parties present additional evidence regarding three specific topics: (1) explaining the module system, (2) showing DeAngelo's alleged requests to Vanderbilt for reasonable accommodations, and (3) documenting Vanderbilt's alleged rushed review of DeAngelo's grades. Both parties read this language in the court's conversion order as limited to only these three issues.

Even accepting such a limited reading of the district court's conversion order, DeAngelo was not prevented from engaging in discovery on the cause of his academic strikes. DeAngelo contends that he was not properly notified that the court would be considering evidence on the cause of his academic strikes and asserts that the court should have only considered that issue based on the allegations contained in his amended complaint. DeAngelo states that had the converted motion included the issue of the cause of his academic issues, he would have "(1) sought clarification of relevant professors' grading systems, (2) challenged professors' self-serving explanations of low grades, (3) sought expert review of DeAngelo's exams and work product, and (4) sought expert opinion concerning the efficacy of the proposed accommodations." But the second issue identified by the district court, which focused on DeAngelo's alleged requests to Vanderbilt for reasonable accommodations, was relevant to the issue of whether DeAngelo was "otherwise qualified" and therefore was relevant to the cause of his academic issues. Evidence regarding what accommodations DeAngelo requested and whether Vanderbilt provided these

accommodations provided the district court with insight about whether DeAngelo's disability contributed to his academic issues and whether he was "otherwise qualified" to remain in the program. So while the district court did not explicitly identify the issue of the cause of DeAngelo's academic issues, the court did identify a related issue that was aimed at getting to the heart of whether DeAngelo was "otherwise qualified" to remain in the MBA program, which was a central component of Vanderbilt's motion. Accordingly, DeAngelo was not precluded from engaging in additional discovery regarding this issue.

Further, the district court explicitly permitted DeAngelo to ask for additional discovery in litigating the converted motion. In the court's case management order following the conversion order, the court informed DeAngelo that he could "[s]ubmit to the Court a motion seeking permission to take additional discovery if Plaintiff believes that the information obtained is inadequate to allow Plaintiff a reasonable opportunity to present all material that is pertinent to the pending motion." But DeAngelo never asked for additional discovery regarding the cause of his academic strikes even though this was relevant to the issue of whether DeAngelo was "otherwise qualified" and whether he could meet Vanderbilt's academic requirements with reasonable accommodations—critical aspects of Vanderbilt's motion.

Also, DeAngelo engaged in discovery related to the cause of his academic strikes. DeAngelo was the one who submitted the professors' explanations of his LP and F grades. Although he now contends that this evidence was included for a purpose other than to show the cause of his academic strikes, we cannot fault the district court for using this evidence in its assessment of why DeAngelo received his academic strikes. Indeed, these academic reports are direct evidence of why DeAngelo received academic strikes in these classes. In addition, DeAngelo obtained disparaging emails from Vanderbilt's faculty about him during discovery.

DeAngelo included statements from these emails in his supplemental brief after Vanderbilt's motion had been converted to a motion for summary judgment. Accordingly, DeAngelo was able to present this evidence to the district court in support of his argument that his professors were biased against him, and at no point did he request additional discovery on the matter despite the opportunity to do so.

Thus, DeAngelo had adequate notice that the court would be considering evidence—including the evidence that he presented—regarding the cause of his academic strikes and whether he was "otherwise qualified," and he was not precluded from engaging in discovery on these topics. Given that the court's conversion order applied to all matters raised in Vanderbilt's Rule 12(b)(6) motion, the district court properly assessed whether DeAngelo was "otherwise qualified" under the summary judgment standard.

The court properly concluded that DeAngelo was not "otherwise qualified" to continue in Vanderbilt's MBA program, as DeAngelo did not present evidence to raise a genuine issue of material fact that he would have been able to meet the program's academic requirements had he been provided the promised reasonable accommodations.

To establish that an individual was dismissed from an academic program in violation of the ADA or Rehabilitation Act, a plaintiff must show: "(1) [he] is handicapped or disabled as defined in each statute, (2) [he] is 'otherwise qualified' to continue in the program, and (3) [he] was dismissed from the program on the basis of his handicap or disability." *Kaltenberger*, 162 F.3d at 435; *see also Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). Vanderbilt concedes for the purposes of this motion that DeAngelo can establish that he was disabled, so the parties dispute only the second and third factors in this analysis. This appeal focuses specifically on whether DeAngelo can establish that he was "otherwise qualified."

An individual with a disability is "otherwise qualified" to remain in an academic program "if [he] can meet its necessary requirements with reasonable accommodations." *Kaltenberger*, 162 F.3d at 435.

DeAngelo cannot establish that he would have been able to meet Vanderbilt's academic standards had Vanderbilt provided the promised reasonable accommodations. DeAngelo had accumulated 2.0 academic strikes before Vanderbilt learned of his disability in November 2015. Vanderbilt was not required to provide any accommodation to DeAngelo under the ADA or Rehabilitation Act until it received notice that he had Autism Spectrum Disorder. *See id.* at 437; *see also Carten v. Kent State Univ.*, 78 F. App'x 499, 500–01 (6th Cir. 2003). We therefore focus on the reasonable accommodations that were requested and promised as well as DeAngelo's grades from this point forward. At this stage, DeAngelo focuses on two reasonable accommodations that Vanderbilt promised to provide: (1) that Dean Christie would be available to counsel DeAngelo and (2) that Vanderbilt would notify its faculty of DeAngelo's disability and educate them on how to accommodate his disability.[3] Although Vanderbilt contends that these proposed accommodations were not sufficiently specific and direct, we will assume without deciding that they were sufficiently specific and direct because there is no genuine issue of fact that either of these accommodations would have made a difference in DeAngelo's inability to meet Vanderbilt's academic requirements.

First, Dean Christie offered to provide DeAngelo with assistance and did not have any involvement in grading his coursework. DeAngelo points to several emails from Dean Christie

---

[3] DeAngelo also now states that Vanderbilt promised an accommodation that "[i]f students were reluctant to perform group work with DeAngelo, faculty would intervene to facilitate DeAngelo's participation in a group." This accommodation was a component of the promised accommodation that Vanderbilt would notify its faculty of DeAngelo's disability and educate them on how to accommodate his disability, not a separate promised accommodation. We therefore discuss Vanderbilt's facilitation of finding groups for DeAngelo to work with when discussing that accommodation.

that contain statements indicating that she found DeAngelo to be rude, disruptive, and disrespectful and asks the court to infer from these statements that Dean Christie sought to undermine DeAngelo, rather than to help him. But DeAngelo does not provide any actual evidence that she sought to undermine him, and he does not provide any evidence that she refused to assist him. Instead, the evidence shows that Dean Christie reached out to him on several occasions to offer assistance. Dean Christie recommended in January 2016 that DeAngelo reconsider his plan to remain in his Negotiation course, a course DeAngelo ended up receiving an F in, because it was collaborative and required working with classmates, which was not DeAngelo's strength. But DeAngelo ignored Dean Christie's caution, responding that he was "a great negotiator." In early 2016, Dean Christie provided DeAngelo with detailed requirements for gaining approval to potentially complete his graduation requirements at another school in response to DeAngelo's request for information regarding this possibility. Also, in February 2016, Dean Christie offered to meet with DeAngelo to develop a plan for DeAngelo to complete his degree in response to an email in which DeAngelo alleged that he detected "fraud and bias" and disparagingly called a professor "a felon." Finally, Dean Christie provided DeAngelo with several notices that he could appeal his dismissal for exceeding the academic strike limit and offered to assist him in drafting his appeal. But again, DeAngelo did not take Dean Christie up on this offer. This evidence demonstrates that Dean Christie did offer to provide DeAngelo with assistance and attempted to aid him in fulfilling his degree requirements.

Perhaps more importantly, Dean Christie had no role in grading DeAngelo, so she could not have caused DeAngelo to receive any academic strikes. Dean Johnson explained to DeAngelo that "faculty hold the authority on grading," and Dean Christie was never DeAngelo's professor. Further, the professors who drafted academic difficulty reports to explain their LP or F grades for

DeAngelo never mentioned that Dean Christie had any influence over the grades they gave. Therefore, Dean Christie could not have caused DeAngelo to exceed the academic strike limit, and her actions did not relate to DeAngelo's ability to meet Vanderbilt's academic requirements.

Second, assuming Vanderbilt did not fully fulfill its promised accommodation of notifying its faculty of DeAngelo's disability and educating them on how to accommodate his disability, this accommodation would not have enabled DeAngelo to meet Vanderbilt's academic requirements. As discussed, DeAngelo had accumulated 2.0 academic strikes before Vanderbilt became aware of his disability and agreed to this accommodation. The accommodation only applied prospectively to the Spring 2016 semester. In Module III of the Spring 2016 semester, DeAngelo received an F in Negotiation and an LP in Applied Investment Management, resulting in another 1.5 academic strikes and putting him above the academic strike limit. There is no question of fact regarding whether this accommodation would have prevented him from receiving these additional academic strikes.

In DeAngelo's Applied Investment Management course, the professor helped DeAngelo find a team to work with on group projects when he was not able to join a team himself, yet DeAngelo still received an LP in the course. DeAngelo received the second lowest score on the final in this class, scoring 30 points, which was well below the class average of 75 and class median of 79. This demonstrates that DeAngelo was unable to succeed in this course even when the school provided him with his desired accommodation of helping him to find classmates who he could work with on group projects.

In DeAngelo's Negotiation course, his F had no relation to Vanderbilt's failure to notify his professor about his disability or failure to educate his professor on how to accommodate his disability. Instead, DeAngelo received an F because he did not properly complete two assignments

accounting for 40% of his grade in the course, including turning in a final paper about characters in a video game rather than completing the actual assigned project. DeAngelo also minimally completed his other assignments in the course. DeAngelo has not presented any evidence or explanation for how Vanderbilt's provision of this accommodation would have assisted him in completing these assignments. Instead, DeAngelo contends that he received a failing grade due to an alleged "misunderstanding" about the final project's requirements and claims that he was not permitted to resubmit his final project because a "misunderstanding" precluded him from discovering before it was too late that he allegedly could have resubmitted the paper. DeAngelo asserts that if the professor had been educated on his disability, then these alleged misunderstandings would not have occurred so he would not have failed the course. But there is no evidence showing that these alleged misunderstandings were related in any way to DeAngelo's disability. According to the psychologist who examined DeAngelo, his disability had no "accompanying intellectual or language impairment." Therefore, there is no evidence that indicates that DeAngelo had issues understanding or adhering to directions on assignments. Accordingly, there is no evidence to suggest that notifying DeAngelo's Negotiation professor about his disability and educating her on how to accommodate DeAngelo's disability would have prevented these alleged misunderstandings. DeAngelo's grade in this course did not relate to Vanderbilt's failure to provide this accommodation—it resulted from DeAngelo's own academic failure.

DeAngelo's assertion that this accommodation would have prevented his F in his International Financial Markets course in the Spring 2015 semester also fails to present a genuine issue of material fact. DeAngelo contends that he would have passed the course if he had been included on a team to work with for group projects, instead of attempting to do this work by

himself. Accordingly, DeAngelo argues that Vanderbilt's failure to accommodate him by notifying and educating its faculty so that faculty could intervene if students refused to work with him resulted in his F in this course. But DeAngelo took this class in the Spring 2015 semester, well before Vanderbilt was aware of his disability and agreed to provide this accommodation. There is no evidence that DeAngelo sought any accommodation that would have retroactively erased this F or provided special leniency for the academic strike earned as a result of this F.[4] A request for such retroactive accommodation likely would not have even been reasonable. *See Carlson v. Carrol Univ.*, No. 09-C-551, 2011 WL 5921445, at *13 (E.D. Wis. Nov. 28, 2011); *cf. DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017). Further, DeAngelo's argument ignores that his professor in this course gave him a "neutral grade" on the team project because he worked alone, so this aspect of his course grade did not negatively impact his overall grade in the course. DeAngelo received an F primarily because his performance on the course assignments demonstrated that he "ha[d] not mastered the material in the course."

Finally, DeAngelo has not established a genuine issue of material fact that his academic difficulties resulted from his professors' bias against him based on his deficits in social communication that stem from his disability, rather than his poor academic performance. DeAngelo claims that the emails in which some Vanderbilt faculty members made derogatory or

---

[4] Under Vanderbilt's academic policy, students are permitted to retake courses in which they received an F and upon successful completion of the course, the strike associated with the initial failure of the course is removed from the student's strike total. DeAngelo was therefore allowed to retake the class and he was in fact enrolled in this course in Module IV of the Spring 2016 semester. By retaking the course and passing it, DeAngelo would have been able to remove the academic strike that he received as a result of getting an F in the course the first time. However, DeAngelo exceeded the academic strike limit during Module III of the Spring 2016 semester and under Vanderbilt's academic policy, a student is dismissed from the program once they accumulate 3 or more academic strikes. Therefore, DeAngelo did not have an opportunity to remove his academic strike caused by his F in his International Financial Markets course before the school's academic policy called for him to be dismissed from the MBA program. Although Vanderbilt's policy called for students to be withdrawn from all incomplete classes once they reached the strike limit, DeAngelo and Vanderbilt reached an agreement in which he was allowed to withdraw from the school after completing Module IV of the Spring 2016 semester. Accordingly, DeAngelo was permitted to complete his second attempt at taking International Financial Markets and this time he passed the course. But this came too late.

inappropriate statements about him demonstrate that these professors were biased against him in their grading. However, as discussed above, only three of these emails were sent by professors who gave DeAngelo an F or LP resulting in academic strikes. Of these emails, only one, which was from DeAngelo's Applied Investment Management professor, was sent before the professor issued DeAngelo his final grade. This email stated that DeAngelo should not have been admitted to Vanderbilt. While these emails are regrettable, they do not indicate that the professors were inclined to grade DeAngelo more harshly based on his behavioral difficulties. The emails do not touch on grading at all. On the other hand, the record contains these professors' detailed and contemporaneous academic justifications for giving DeAngelo low grades that earned him academic strikes. Academic judgments, such as grading, are afforded deference, as faculties are afforded great discretion in assessing students' academic performance. *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 & n.11 (1985). These emails do not indicate that DeAngelo's professors engaged in "a substantial departure from accepted academic norms as to demonstrate that [his professors] did not actually exercise professional judgment." *Id.* at 225. Further, even if the email sent by DeAngelo's Applied Investment Management professor prior to the professor giving DeAngelo his final grade of an LP in the course could give an inference that this professor was biased and did not exercise professional judgment, DeAngelo still would have had 3.0 academic strikes. DeAngelo therefore still would have been in violation of Vanderbilt's academic policy. Thus, given the detailed academic justifications for these grades in the record and the deference afforded to these judgments, the emails do not create a genuine issue of material fact that DeAngelo's professors gave him low grades resulting in his exceeding the academic strike limit because of their alleged bias against him.

Accordingly, DeAngelo has not raised a genuine issue of material fact that he was "otherwise qualified" to continue in Vanderbilt's MBA program. The evidence demonstrates that DeAngelo was unable to meet the program's academic requirements and that the promised reasonable accommodations would not have enabled him to meet these requirements even had they been fully provided.

For the reasons stated above, we affirm the judgment of the district court.